## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA for
The use of BROWN MINNEAPOLIS TANK CO.,
A New Mexico Corporation,

       Plaintiff,

vs.                                                                    No. CIV 11-0291 JB/LFG

KINLEY CONSTRUCTION COMPANY,
A Texas Corporation, and
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss or, in the

Alternative, to Transfer Venue, filed May 18, 2011 (Doc. 16)("Motion").  The Court held a hearing

on July 27, 2011.  The primary issue is whether, pursuant to the Miller Act, 40 U.S.C. §§ 3131-3134,

the United States District Court for the District of New Mexico is the proper venue for Plaintiff

Brown Minneapolis Tank Co. ("BMT Co.") to bring this action.  The Court finds that venue is

appropriate, because the Miller Act's venue provision requires that claims must be brought in the

location where the contract was performed, and the construction was done in New Mexico.  The

Court therefore denies the Motion.

## FACTUAL BACKGROUND

"The basic facts and procedural history are not in dispute."  Motion at 2.  See Use Plaintiff

Brown Minneapolis Tank Co.'s Response to Defendants' Motion to Dismiss Or, in the Alternative,

to Transfer Venue at 1, filed May 31, 2011 (Doc. 20)("Response")("For the most part, the

background facts which are relevant to this issue are not disputed, and the parties have stipulated to the following facts . . . .").  In April 2009, Kinley Construction entered into contract number W912PP-09-C-0025 ("Prime Contract") with the Department of the Army, U.S. Army Corps of Engineers, for the construction of, among other things, two fuel storage tanks and related facilities at Kirtland Air Force Base, located within Bernalillo County, State of New Mexico (the "Project"). Response ¶ 1, at 2.  See Motion ¶ a, at 2.  In connection with execution of the Prime Contract, Kinley Construction, as principal, and Defendant Travelers Casualty and Surety Company of America, as surety, executed payment bond number 105246436.  See Response ¶ 2, at 2.

In September, 2009, Kinley Construction and BMT Co. entered into the Agreement between Contractor and Subcontractor, Contract No. 10-001-01, filed May 18, 2011 (Doc. 16-1)("the Subcontract"), under which BMT Co. agreed to build the fuel storage tanks required for the Project under the Prime Contract.  Motion ¶ b, at 2; Response ¶ 3, at 2. According to Kinley Construction, under the terms of the Subcontract, BMT Co. was to complete fabricating the tanks no later than April 13, 2010.  See Motion ¶ b, at 2; Subcontract ¶ 7, at 4; id. Ex. B.  Pursuant to the Subcontract, BMT Co. performed labor and supplied materials which were incorporated into the work required by the Prime Contract.  See Response ¶ 4, at 2.

Because of high wind conditions at the job site, one of the tanks collapsed in April, 2009. Kinley Construction alleges that BMT Co. negligently failed to adequately protect its work from weather damage; BMT Co. denies that it was negligent and alleges that it went far beyond industry standards in its efforts to secure the tank.  See Motion ¶ c, at 2-3.  BMT Co. rebuilt the tank.  BMT Co. also designed and installed a wind protection system intended to protect the tank from further damage.  In June, 2010, however, a second high wind event caused the tank to collapse a second time.  See Motion ¶ d, at 3.  The final completion of the Project was delayed due to the two tank

-2-

collapses.  A dispute has arisen between BMT Co. and Kinley Construction regarding whether BMT Co.'s performance was timely under the Subcontract.  <u>See</u> Response ¶ 6, at 2.  Kinley Construction has taken the position that BMT Co. is responsible for the costs Kelly incurred from the delays, which BMT Co. denies.  <u>See</u> Motion ¶ e, at 3.  BMT Co. has issued, and Kinley Construction has refused to pay, invoices for labor and materials furnished to and incorporated into the work required by the Prime Contract.  <u>See</u> Response ¶ 5, at 2.

## PROCEDURAL BACKGROUND

Kinley Construction filed suit against BMT Co. in the 67th Judicial District Court, Tarrant County, Texas on March 8, 2011.  <u>See</u> <u>Kinley Constr. Co. v. Brown Minneapolis Tank Co.</u>, No. 67-251478-11, Plaintiff's Original Petition (Tex. D. Ct. March 8, 2011)(Doc. 16-2)(the "Texas Action").  Kinley Construction brought breach of the contract, negligence, indemnity, and unjust enrichment claims based on BMT Co.'s performance under the Subcontract, alleging that BMT Co. was at fault for the collapse of the fuel tanks and liable to the ensuing delays and the $336,138.75 in costs Kinley Construction incurred as a result of the delays.  On April 8, 2011, BMT Co. removed the Texas Action to the United States District Court for the Northern District of Texas.  <u>See</u> <u>Kinley Constr. Co. v. Brown Minneapolis Tank Co.</u>, No. CIV 11-0231-01, Notice of Removal (N.D. Tex. Apr. 8,2011).

On April 6, 2011, BMT Co. filed its Complaint for Violation of the Miller Act, Claim on Payment Bond and Breach of Contract in this action.  <u>See</u> Doc. 1 ("Complaint").  BMT Co. commenced this action within one year of the date on which it last performed labor or supplied materials for the work required by the Prime Contract.  <u>See</u> Response ¶ 8, at 2.  BMT Co. brings Miller Act claim against the Defendants, a breach of contract claim against Kinley Construction, and a claim for payment on the bond against Travelers.  <u>See</u> Complaint Counts I-III, at 3-4.  BMT Co.

alleges that, "[w]hile Brown was prosecuting its work under the Subcontract, the construction site experienced weather events which -- through no fault of Brown's -- resulted in collapses of the partially erected tanks."  Complaint ¶ 10, at 1.  BMT Co. alleges that it completed all work it was obligated to do under the contract, and that Kinley Construction refuses to pay the $74,402.00 balance that remains due under the contract.

On April 27, 2011, BMT Co. filed a motion to transfer the Texas Action to this Court, to be consolidated with this action.  See Kinley Constr. Co. v. Brown Minneapolis Tank Co., No. CIV 11-0231-08, Defendant's Motion to Transfer Venue (N.D. Tex. April 27, 2011)("Motion to Transfer Venue").  Kinley Construction opposes the motion.  See  Kinley Constr. Co. v. Brown Minneapolis Tank Co., No. CIV 11-0231-19, Plaintiff's Response and Opposition to Defendant's Motion to Transfer Venue (N.D. Tex. May 18, 2011).

The Defendants now move to dismiss or, in the alternative, to transfer venue to the Northern District of Texas.  The Defendants assert that, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the cases raise substantially overlapping issues.  They argue that this case involves duplicative or substantially similar issues as the Texas Action, and that the two cases should be resolved together.  They further argue that, because the Texas Action was filed first, the Northern District of Texas is the appropriate venue for adjudication.  The Defendants also contend that BMT Co.'s claims arise from the same transaction or occurrence, and therefore must be brought, if at all, as compulsory counterclaims in the Texas action under rule 13 of the Federal Rules of Civil Procedure.

On May 31, 2011, BMT Co. filed its Response.  BMT Co. does not dispute that the facts in this case involve identical or substantially overlapping issues as the Texas Action.  Indeed, BMT Co. asserts in its Motion to Transfer Venue that it filed in the Texas Action that the Texas Action

should be consolidated with this action, because the actions "involv[e] the same parties, the same contract and the same incident."  Motion to Transfer Venue at 1.  BMT Co. argues instead that, notwithstanding the first-to-file doctrine, under the Miller Act's venue requirements, the District Court of New Mexico has "exclusive venue" for its Miller Act claim.  Response at 1.  They contend that the Miller Act's venue provision is a special circumstance that makes it unnecessary for the Court to weigh the inconveniences to the parties, because "[w]here Congress has established an exclusive venue for actions, inconvenience is not an appropriate consideration for the courts." Response at 5.  BMT Co. further argues that the "Miller Act constitutes a special circumstance that outweighs prudential venue considerations of the first-filed suit."  Response at 6.

On June 3, 2011, the Defendants filed their Memorandum in Reply to Plaintiff's Response to Motion to Dismiss or, in the Alternative [sic], to Transfer Venue.  See Doc. 21 ("Reply").  The Defendants assert that they filed the Texas Action almost a month before BMT Co. filed this action. The Defendants assert that BMT Co. contends that the Court has exclusive jurisdiction, and argues that the Miller Act venue provision "'is merely a venue requirement' and not a jurisdictional absolute."  Reply at 2 (quoting F.D. Rich Co., Inc. v. United States ex rel. of Indus. Lumber Co., 417 U.S. 116 (1974)).  The Defendants further contend that the Miller Act's venue provision benefits only defendants, and defendants may elect to assert or waive the venue requirement.  Accordingly, the Defendants argue, because they do not seek the Miller Act's venue provision's benefits, BMT Co. has no ground upon which to invoke them.  The Defendants also assert that "the inconvenience that might be suffered by one party or the other, based on where the cases ultimately are consolidated and tried, is equally balanced."  Reply at 4.

At the July 27, 2011 hearing, Thomas G. Gruenert, counsel for the Defendants, stated that the Court was likely correct to surmise that the Honorable John H. McBryde, United States District

Court Judge for the United States District Court for the Northern District of Texas, was likely waiting to see whether the Court would grant the Motion before ruling on BMT Co.'s Motion to Transfer Venue.   See Transcript of Hearing at 5:19-6:8 (taken July 27, 2011)(Court, Gruenert)("Tr.").[1]  Mr. Gruenert also contended that the weight of the caselaw supports that Judge McBryde, who first had jurisdiction over this matter, should decide which venue is appropriate.  See Tr. at 6:20-7:1 (Gruenert).  The Defendants asserted that the Miller Act does not provide exclusive jurisdiction in Albuquerque, New Mexico.  See Tr. at 7:2-5 (Gruenert).  They argued that the Miller Act's venue provision is "an election that Kinley Construction could have taken advantage of to insist on the case being in Albuquerque," and that "Kinley has not done that."  Tr. at 7:2-5 (Gruenert).  Mr. Gruenert asserted that "forum nonconvenience issues cut both ways," Tr. at 7:19-8:5 (Gruenert), and that the forum nonconvenience analysis "is a wash,"  Tr. at 8:19-20 (Gruenert).  The Defendants further contended that the Northern District of Texas is where Kinley Construction is headquartered, and where monies related to the contract were sent and received.  See Tr. at 6:20-7:1 (Gruenert).

David Gorman, BMT Co.'s counsel, responded that the Miller Act's venue provision is clear on its face that this Court is the exclusive venue for this case.  See Tr. at 9:14-16 (Gorman).  Mr. Gorman argued that the cases on which the Defendants rely for the proposition that the Miller Act's venue provision protects defendants address circumstances in which defendants, not plaintiffs, seek to challenge venue, making them inapposite.  See Tr. at 9:16-21 (Gorman).  Mr. Gorman further argued that the Defendants should not be able to undermine BMT Co.'s Miller Act rights by first filing in a different venue.  See Tr. at 9:25-10:3 (Gorman).  Mr. Gorman acknowledged that the

---

[1] The Court's citations to the transcript are to the Court Reporter's original, unedited version. Any final version may contain different line and/or page numbers.

United States Court of Appeals for the Tenth Circuit recognizes the first-filed rule as a rule of judicial convenience, but asserted that it applies when other considerations are equal, and that Congress' express venue provision in the Miller Act trumps the judge-made doctrine.  See Tr. at 11:23-12:13 ("Mr. GORMAN: . . . I don't think a court-developed rule of convenience can overcome Congress' mandate.").

The parties agreed that this Action and the Texas Action should be tried together.  See Tr. at 12:14-20 (Gorman); Tr. at 6:9-22 (Gruenert).  The parties also agreed that there is no forum selection clause in the Subcontract.  See Tr. at 10:15-16 ("MR. GORMAN: . . . . [T]here is no forum selection clause . . . ."); Tr. at 11:11 ("MR. GRUENERT: . . . .  There is not a forum selection clause . . . .").

On August 10, 2011, Judge McBryde granted BMT Co.'s Motion to Transfer Venue.  He ordered the Texas Action transferred to the District of New Mexico.  See Kinley Constr. Co. v. Brown Minneapolis Tank Co., No. CIV 11-0231-35, Order Transferring Case (N.D. Tex. August 10, 2011).  On August 11, 2011, the Texas Action was transferred to the District of New Mexico, and opened as case No. CIV 11-0705.

## LAW REGARDING THE MILLER ACT

"[T]he Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal  project."  F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc., 417 U.S. 116, 121-22 (1974).[2]  See Limerick v. T. F. Scholes,

---

[2] The Supreme Court of the United States explained:

Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law.  But a lien cannot attach to Government property, see Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380 . . . (1917), so suppliers on Government projects are deprived of their

Inc., 292 F.2d 195, 196 (10th Cir. 1961)("Congress enacted the Miller Act to protect persons who supply labor and materials for the construction of federal buildings.").[3]  "[T]he Miller Act . . . is 'highly remedial in nature' and must be liberally construed 'to effectuate the Congressional intent to protect those whose labor and materials go into public projects." Limerick v. T. F. Scholes, Inc., 292 F.2d at 196 (quoting United States ex rel. Sherman v. Carter, 353 U.S. 210, 216 (1957)).

"The Miller Act grants federal courts exclusive jurisdiction."  United States ex rel. B & D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co., 70 F.3d 1115, 1118 (10th Cir. 1995)(citing United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1493 (10th Cir. 1995); United States ex rel. Owens-Corning Fiberglass Corp. v. Brandt Constr. Co., 826 F.2d 643, 645 (7th Cir. 1987)(discussing how federal courts have unanimously held Miller Act jurisdiction to be exclusively federal), cert. denied, 484 U.S. 1026 (1988)).

Before a 2002 amendment, the Miller Act, which was then codified at 40 U.S.C. § 270b(b), stated:

> Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be

---

usual security interest.  The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers.

F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc., 417 U.S. at 121.  See Ill. Sur. Co. v. John Davis Co., 244 U.S. 376, 380 (1917)("The purpose of the act was to provide security for the payment of all persons who provide labor or material on public work.  This was done by giving a claim under the bond in lieu of the lien upon land and buildings customary where property is owned by private persons.").

[3] "Prior to the Miller Act the subject of contractors' bonds for federal public works was covered by the Heard Act, [Act of August 13, 1894, 28 Stat. 278, as amended by the Act of February 24, 1905, 33 Stat. 811] and the provisions therein relating to the institution of suit were practically identical with those now found in the Miller Act."  Limerick v. T. F. Scholes, Inc., 292 F.2d at 196.

> commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him.  The United States shall not be liable for the payment of any costs or expenses of any such suit.

40 U.S.C. § 270b(b)(2000)(emphasis added).  Courts disputed whether the Miller Act's provision that the suit must be brought in the "district in which the contract was to be performed and executed" was a jurisdictional requirement or a venue requirement.  In United States Fidelity & Guaranty Co. v. Hendry Corp., 391 F.2d 13, 17 n.3 (5th Cir. 1968), the United States Court of Appeals for the Fifth Circuit stated:

> There has been much debate whether 270b(b) is a jurisdiction or a venue statute.  We agree with the author of the comment [76 Harv.L.Rev. 635 (1963)] that the section has both jurisdictional and venue attributes.  It is jurisdictional in that clearly it authorizes suit to be brought in the district court.  On the other hand, it is not jurisdictional in the sense that actions are limited to the federal court to insure [sic] uniform or sympathetic interpretation of the Act.  It is like a venue statute in that it severely limits the number of forums in which the defendant may be required to answer.

391 F.2d at 17 n.3 (citations omitted).  See Tex. Constr. Co. v. United States ex rel. Caldwell Foundry & Mach. Co., 236 F.2d 138, 140 (5th Cir. 1956)(noting that "[t]his precise question [whether the language restricts jurisdiction or venue] has not been decided by any federal court," and "conclud[ing] that . . . the statute is a restriction only on venue rather than on the power of the court to entertain the suit").

Similarly, in F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc., the Supreme Court of the United States rejected the petitioner's contention that the Miller Act's language created a jurisdictional requirement and held that it established "merely a venue requirement," which is satisfied if there is a "sufficient nexus" between the contract and the venue. 417 U.S. at 125.  In that case, the prime contractor, Rich, contracted with the United States to build family housing units at Beale Air Force Base in California.  Transmerica Insurance Co., as Rich's

surety, posted a payment bond in accordance with the Miller Act. "Rich then awarded Cerpac two contracts on the project, one to select, modify, detail, and install all custom millwork, and one merely to supply all standard exterior plywood, each contract incorporating by reference terms of the prime contract." 417 U.S. at 119. Cerpac, in turn, placed a single order with plaintiff/respondent Industrial Lumber Co. "for all exterior plywood required under its plywood contract for the Beale project." 417 U.S. at 119. Rich also had a contract with Cerpac to supply plywood for another government project being constructed in Charleston, South Carolina.

Shortly after Industrial's shipments began, Rich informed Cerpac that more plywood was needed for the Charleston project. Rich and Cerpac decided to divert lumber from the California project to Charleston.

> Accordingly, Industrial was advised to supply a shipment of the plywood called for under its Beale contract with Cerpac to the South Carolina site. Industrial arranged for the wood to be shipped by one of its suppliers to a railhead near Charleston. The shipment diverted to South Carolina was one of 22 called for by Industrial's Beale Contract. There were several subsequent shipments to the California site under that contract.

417 U.S. at 119 (footnotes omitted).

Eventually, Cerpac fell behind in its payments to Industrial, and Industrial filed suit against Rich and its surety in the United States District Court for the Eastern District of California. Rich argued, among others things, "that venue for suit on the South Carolina shipment was improper in the Eastern District of California." 417 U.S. at 120. The district court rejected Rich's argument, and granted judgment for Industrial. On appeal, the Supreme Court agreed with the district court' holding that the Eastern District of California was the appropriate venue in the case:

> We . . . agree with the courts below that venue under the Miller Act for suit on the shipment diverted to South Carolina properly lay in the Eastern District of California. The Act provides:

'Every suit instituted under this section shall be brought in . . . the United States District Court for any district in which the contract was to be performed and executed and not elsewhere . . . .' 40 U.S.C. s 270b(b).

Petitioners argue that this provision bars a district court in California from adjudicating respondent's claims arising from the shipments of plywood delivered in South Carolina.  But § 270b(b) is merely a venue requirement and there was clearly a sufficient nexus for its satisfaction.  The 'Beale 647' contract between Cerpac and Industrial was executed in California, all of the materials described therein to be delivered to a worksite in that State.  Although one of the 22 shipments made pursuant to the contract was later diverted to South Carolina for petitioner Rich's convenience, the site for performance of the original contract remained the same for Miller Act purposes.  Several shipments to the Beale site were made after the South Carolina shipment.  Moreover, petitioners have pointed to no prejudice resulting from the case's being heard in the California court and considerations of judicial economy and convenience clearly support venue in the District Court where all of respondent's claims arising from the 'Beale 647' contract could be adjudicated in a single proceeding.

417 U.S. at 124-25 (footnotes omitted)(emphasis added).

In 2002, Congress amended and recodified 40 U.S.C. § 270(b) at 40 U.S.C. § 3133(b)(3) in

its current form, which provides:

**Venue**. -- A civil action brought under this subsection must be brought--

**(A)** in the name of the United States for the use of the person bringing the action; and

**(B)** in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy.

40 U.S.C. § 3133(b)(3)(bold in original).  Congress thus made express that the Miller Act's

requirement  that suit be filed in the district where the "contract was to be performed" is a venue

requirement and not a jurisdictional requirement.  While Congress kept the language specifying that

an action "must be brought . . . in the United States District Court for any district in which the

contract was to be performed and executed," it dropped the "and not elsewhere" language.  This

change appears to be primarily stylistic, because the statute continues to require that the action

"must be brought" in the district where the contract was performed.  At most, the change further

clarifies that the provision is a venue requirement and not a jurisdictional requirement.  Accordingly,

the case law construing the Miller Act's old language continues to control.

> It may well be said that where a provision in the subsequent Act is identical with that in the prior law, and no change in other provisions of the new statute indicate an intent by Congress to depart from the court's construction of the former, such construction should normally be equally binding as though the particular section had itself been construed; unless, of course, the court itself has changed its position.

Tex. Constr. Co. v. United States ex rel. Caldwell Foundry & Mach. Co., 236 F.2d at 140.

Despite the seemingly absolute language of the Miller Act's venue provision, courts have

interpreted it to be a venue requirement that parties may waive.  In United States for Use of B & D

Mechanical Contractors, Inc. v. St. Paul Mercury Insurance Co., 70 F.3d 1115 (10th Cir. 1995), the

Tenth Circuit held that a forum selection clause can override the Miller Act's venue requirement:

> Although the language of the Miller Act, 40 U.S.C. § 270b(b), requiring that suits be brought in the judicial district where the contract was performed "and not elsewhere" seems to mandate strict conformance, judicial interpretation holds otherwise.  While dealing with the merits of another issue, the Supreme Court characterized § 270b(b) as being "merely a venue requirement."  F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 125 . . . (1974).  In United States ex rel. Pittsburgh Tank & Tower, Inc. v. G & C Enterprises, Inc., 62 F.3d 35, 36 (1st Cir. 1995), the court held a contractual forum selection clause prevailed when it conflicted with the venue designated by the Miller Act.  The G & C Enterprises court noted that even though the Supreme Court was not addressing a conflicting forum selection clause in F.D. Rich, the Court's designation that the statutory language was a mere venue requirement was "explicit and very hard for a lower federal court to ignore."  Id. at 36.  This court also finds such a designation hard to ignore.  Interestingly, even prior to the F.D. Rich decision, courts deciding the issue had held almost without exception that the provision was a venue requirement.  United States ex rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc., 364 F.2d 705, 707 (2d Cir.), cert. denied, 385 U.S. 924 . . . (1966).  It is well settled that venue provisions are subject to contractual waiver.  National Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 . . . (1964).

> Three circuits have addressed forum selection clauses that conflict with the Miller Act's venue provisions.  All three have held that as a mere venue requirement, § 270b(b) is subject to contractual waiver by a valid forum selection clause.  See

> FGS Constructors, Inc. v. Carlow, 64 F.3d 1230, 1233 (8th Cir. 1995) (holding the Miller Act's venue requirement could be waived by defendants); G & C Enterprises, 62 F.3d at 36; In re Fireman's Fund Ins. Cos., 588 F.2d 93, 95 (5th Cir. 1979) (holding the case for overriding the Miller Act particularly strong where forum selection clause was suggested by defendants -- the parties the act was designed to protect).

70 F.3d at 1117. The Tenth Circuit concluded that it was "persuaded by [its] sister circuits and agree[d] that a valid forum selection clause supersedes the Miller Act's venue provision." 70 F.3d at 1117. The forum selection clause provided that "[t]he Subcontract Agreement and any claims arising under it shall be governed by the laws of the State of Texas and exclusive venue shall be proper in Bexar County, Texas." 70 F.3d at 1116. The Tenth Circuit went on to decide that the forum selection clause was invalid, because it provided that a state court would have exclusive jurisdiction over a suit arising under the contract, and, "[a]lthough parties are able to contractually alter the Miller Act's venue provisions, they are not able to change its jurisdictional requirements." 70 F.3d at 1117.

## LAW REGARDING TRANSFER OF VENUE

In 1948, Congress enacted the federal change-of-venue statute, codified at 28 U.S.C. § 1404, to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district. That statute provides, in pertinent part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) affords a district court broad discretion to adjudicate motions to transfer based on a case-by-case review of convenience and fairness. See Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991). "Recognizing that what is convenient for one litigant may not be convenient for the other, the Supreme Court has taught that section 1404(a) "is intended to place

discretion in the district court to adjudicate motions for transfer according to [a] '. . . case-by-case consideration of convenience and fairness.'" Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 977 (7th Cir. 2010)(quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)(quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). "The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice." Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d at 977. The statute permits a "flexible and individualized analysis," and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 29.

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d at 1516 (internal quotation marks omitted). See Texas Gulf Sulfur v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)(stating the factors that courts consider in making a venue determination under § 1404(a)).

The "interest of justice" is a separate element of the transfer analysis that relates to the efficient administration of the court system. Van Dusen v. Barrack, 376 U.S. at 626-27. "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the

controversy."  Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d at 977 (citations omitted).  In some circumstances, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d at 977 (citing Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220-21 (7th Cir. 1986)).

## LAW REGARDING THE FIRST-TO-FILE RULE

"[T]he 'first to file' rule . . . .  pertains when two district courts have jurisdiction over the same controversy, affording deference to the first filed lawsuit."  Lipari v. U.S. Bancorp NA, 345 F. App'x 315, 317 (10th Cir. 2009).

> Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."  Sutter Corp. v. P & P Indus., Inc., 125 F.3d 914, 917 (5th Cir. 1997) (quotation omitted).  To aid in achieving this goal, the "first-to-file" rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court.  Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 625 (9th Cir. 1991).  However, "simply because a court is the first to obtain jurisdiction does not necessarily mean that it should decide the merits of the case."  Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1164 (10th Cir. 1982).  We review the district court's decision whether to rely on the first-to-file rule only for abuse of discretion.  Alltrade, 946 F.2d at 625.

Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga., 189 F.3d 477, at *2 (10th Cir. 1999)(table).

Courts do not mechanically apply the first-to-file rule, but "the court which first obtains jurisdiction should be allowed to first decide issues of venue."  Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1164 (10th Cir. 1982).  A district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction.  See Tempco Elec. Heater Corp. v.

Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir. 1987)(stating that, where declaratory judgment action is filed in anticipation of trademark infringement action, the "infringement action should proceed, even if filed" after the declaratory judgment action); Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir.1967).

In Hospah Coal Co. v. Chaco Energy Co., the Tenth Circuit reversed and remanded a district court's preliminary injunction order with instructions for the district court to dismiss that action so that the court in which the matter was first filed could first decide issues of venue.   The Tenth Circuit stated:

> Both parties recognize the general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case.   O'Hare International Bank v. Lambert, 459 F.2d 328 (10th Cir. 1972), and cases cited therein.
>
> . . . .
>
> This circuit has adopted the rule announced in Barber Greene Company v. Blaw-Knox Company, 239 F.2d 774, 778 (6th Cir. 1957) that, "in both in rem and in personam actions, jurisdiction relates back to the filing of the complaint."   Accord, Product Engineering and Manufacturing, Inc. v. Barnes, 424 F.2d 42 (10th Cir. 1970).   The rule that jurisdiction relates back to the filing of the complaint gives effect to Fed. Rules Civ. Proc. rule 3, 28 U.S.C.A., which provides that, "(a) civil action is commenced by filing a complaint with the court."
>
> . . . .
>
> [Kerotest Mfg. Co. v. C-0-Two Co., 342 U.S. 180 (1952),] stands for the proposition that simply because a court is the first to obtain jurisdiction does not necessarily mean that it should decide the merits of the case.   However, in Kerotest the Court pays great deference to the district court's ability to decide if it should accept venue.   We believe that Kerotest is in line with our view that the court which first obtains jurisdiction should be allowed to first decide issues of venue.

673 F.2d at 1163-64.

In Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc., the United States Court of Appeals for the Seventh Circuit explained:

-16-

In an effort to defeat the transfer analysis, [the plaintiff] Research Automation maintains that [the defendant's] Schrader–Bridgeport's motion must fail because a plaintiff's choice of forum is afforded deference so long as the chosen forum is related to the case.  See [Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)] ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").  But where, as here, the case involves two identical suits in distinct venues, this factor loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed.  The district court was right to discount this element in this context.

. . . .

Since [Martin v. Graybar Electric Co., 266 F.2d 202, 204 (7th Cir. 1959),] . . . we have made clear that . . . -- where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief -- we ordinarily give priority to the coercive action, regardless of which case was filed first.  In those cases, we have repeatedly taught that this circuit does not rigidly adhere to a first-to-file rule.  Even in Graybar Electric, we noted that any mechanical solution of such a problem would not be "[w]ise judicial administration." 266 F.2d at 203, quoting Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co., 342 U.S. 180 . . . (1952).

Courts have also departed from a first-to-file rule where one party files its lawsuit in anticipation of an impending suit by the opposing party.  See, e.g., Schwarz v. National Van Lines, Inc., 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) (finding that where a plaintiff files an action "in the face of a clear threat" that the opposing party will sue, a court will dismiss a first-to-file argument).  This type of behavior only exacerbates the risk of wasteful litigation.

This court has "never laid down an inflexible rule that the prior filing controls."  Warshawsky & Co. v. Arcata National Corp., 552 F.2d 1257, 1265 (7th Cir.1977).  Research Automation relies on language from Asset Allocation & Management Co. v. Western Employers Insurance Co., 892 F.2d 566 (7th Cir. 1989), stating that there is a rebuttable presumption that the first case should proceed, "subject to the principles that govern requests for transfer to a more convenient forum." 892 F.2d at 573.  The Asset Allocation opinion also said that a district court has "a power, [but] not a duty," to enjoin a second-filed case.  Id. at 572.  In our view, the Asset Allocation court's intended meaning is clear: the first-filed case may proceed where the principles that govern requests for transfer do not indicate otherwise.  We reiterate our holding in Tempco Electric that, although a first-to-file rule would have the "virtue of certainty and ease of application, . . . the cost -- a rule which will encourage an unseemly race to the courthouse . . . -- is simply too high." 819 F.2d at 750.

Our approach is not unique in this respect.  The other circuits have developed

-17-

similar practices. Though the Eleventh Circuit has made reference to a "strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule," and has "require[d] that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception" to the rule, Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) (citations omitted), we do not find as strong support among our sister circuits. Most maintain the rule as a guiding principle to be left to the discretion of the district court. For example, though the Third Circuit refers to a first-to-file rule, it is "not a mandate directing wooden application of the rule . . . . District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." EEOC v. University of Pennsylvania, 850 F.2d 969, 972 (3d Cir.1988). The Sixth and D.C. Circuits have adopted the same reasoning. See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007) (finding that the first-to-file rule is "not a strict rule" and that district courts "have the discretion to dispense with [it] where equity so demands"), quoting AmSouth Bank v. Dale, 386 F.3d 763, 791 n.8 (6th Cir. 2004), and Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc., 16 Fed. Appx. 433, 437 (6th Cir. 2001); Handy v. Shaw, Bransford, Veilleux & Roth, 325 F.3d 346, 350 (D.C. Cir. 2003) (emphasizing that district courts should balance equitable considerations rather than use "a mechanical rule of thumb") (citation and quotation marks omitted).

The Fourth and Fifth Circuits have also indicated that courts should consider the filing chronology as part of the transfer calculus. See West Gulf Maritime Association v. ILA Deep Sea Local 24, 751 F.2d 721, 728–32 (5th Cir. 1985) (discussing first-to-file as a general principle for the discretion of the district court in deciding whether to transfer); Ellicott Machine Corp. v. Modern Welding Co., 502 F.2d 178, 181–82 (4th Cir. 1974).

The Ninth Circuit has noted that the first-to-file rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982). The Eighth Circuit has likewise treated the timing of filing as an element "to be applied in a manner best serving the interests of justice," serving as a guide to the court's discretion "absent compelling circumstances." Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1005 (8th Cir. 1993), quoting United States Fire Insurance Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487 (8th Cir. 1990).

The First, Second, and Tenth Circuits maintain substantial support for the rule, but they too have left room for discretion. See Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (noting that the first-filed action is "generally preferred"), quoting Cianbro Corp. v. Curran–Lavoie, Inc., 814 F.2d 7 (1st Cir. 1987); Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1164 (10th Cir.1982) (holding that "the court which first obtains jurisdiction should be allowed to first decide issues of

venue," but that this "does not necessarily mean that it should decide the merits of the case").

Research Automation relies on <u>Citigroup Inc. v. City Holding Co.</u>, 97 F.Supp.2d 549 (S.D.N.Y. 2000), to argue that the party filing second has a burden to demonstrate "special circumstances" in order to overcome the first-to-file rule. We decline to impose such a burden.  Notwithstanding that the Second Circuit adheres more closely to a first-to-file principle than other circuits.

626 F.3d at 979-82 (footnotes and some citations omitted) .

## ANALYSIS

The Court denies the Defendants' Motion.  Courts interpret the Miller Act's venue provision liberally, and there does not appear to be any sound reason in this case not to give effect to Congress' intent that Miller Act cases be brought where the contract was to be performed and executed.  Accordingly, the Court will not transfer this case.  Moreover, Judge McBryde granted BMT Co.'s Motion to Transfer Venue, and transferred the Texas Action to the District of New Mexico.  Consequently, there is no longer a sound reason to transfer the case to the Northern District of Texas.

## I.   THE TEXAS ACTION INVOLVES IDENTICAL OR SUBSTANTIALLY OVERLAPPING ISSUES AS THIS ACTION.

The Defendants contend that this action presents duplicative or substantially identical facts as the Texas Action. They therefore argue that the Court should dismiss this action or transfer venue to the Northern District of Texas.  BMT Co. does not dispute that the facts in this case involve identical or substantially overlapping issues as the Texas Action.  Indeed, BMT Co. asserts in its Motion to Transfer Venue that it filed in the Texas Action that the Texas Action should be consolidated with this action, because the actions "involv[e] the same parties, the same contract and the same incident."  Motion to Transfer Venue at 1.  BMT Co. argues that, pursuant to the Miller Act, the District of New Mexico has "exclusive venue" for its Miller Act claim.  Response at 1.

"[T]he 'first-to-file' rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court." Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga., 189 F.3d 477, at *2 (citations omitted). See Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 603 (5th Cir. 1999). "[I]n determining whether to dismiss an action, the court must answer two questions: (1) are the two pending actions so duplicative or involve substantially similar issues that one court should decide the issues; and (2) which of the two courts should resolve the case?" Excel Music, Inc. v. Simone, No. 95-3626, 1996 WL 5708, at 5 (E.D. La. Jan. 5, 1996)(citing Texas Instruments, Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 997 (E.D. Tex 1993). Generally, the issues presented in two separate actions need not be identical to allow one court to decide the action, "but there must be substantial overlap between the two suits." Excel Music, Inc. v. Simone, 1996 WL 5708 at 5. The two cases must have such a common identity that a determination in one action leaves little or nothing to be determined in the other. See Thermal Dynamics Corp. v. Union Carbide Corp., 214 F. Supp. 773, 774 (S.D.N.Y. 1963). In the present case, there is no doubt that there would be nothing left to try in this action if the Northern District of Texas resolves that Texas Action. Should the court in Texas conclude that BMT Co. was at fault for failing to timely complete its work, thereby damaging Kinley Construction, the Miller Act claim necessarily would be moot. Similarly, if this Court concluded that BMT Co. was not responsible for the fuel tanks' collapse and the resulting delays, then Kinley Construction's claims in the Texas Action would be moot.

## II.   THE MILLER ACT'S VENUE PROVISION IS NOT JUST FOR THE DEFENDANTS' PROTECTION.

Because the issues in this action and the Texas Action are identical or substantially overlapping, the question becomes which court should decide the issue. The Defendants contend

that "[t]he court with prior jurisdiction over the common subject matter should resolve all issues presented in related actions." W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 730 (5th Cir. 1985). BMT Co. responds that the Miller Act's venue provision prevails over the first-to-file rule. The Court believes that the Miller Act's venue provision, which requires that a Miller Act claim be filed in the district where the contract was to be performed, prevails over the judicial doctrine favoring keeping a suit in the first court that has jurisdiction. The Court agrees that either no forum non conveniens analysis applies in light of a Miller Act's venue provision, or, in the alternative, that the Miller Act's venue provision is a "special circumstance" that prevails over the first-filed rule, Hoffman v. Blaski, 363 U.S. 335, 352 (1960)("Section 1404(a) was devised to avoid needless hardship and even miscarriage of justice by empowering district judges to recognize special circumstances calling for special relief."); especially where, as here, the forum non conveniens analysis is a "is a wash," Tr. at 8:19-20 (Gruenert).

The Defendants contend that the Miller Act's venue provision benefits only defendants. The plain language of the Miller Act's venue provision, which states that an action under it "must be brought . . . in the United States District Court for any district in which the contract was to be performed and executed," 40 U.S.C. § 3133(b)(3)(B), does not suggest such a limited reading. The Defendants cite two cases in support of this contention. The Defendants assert the Fifth Circuit "stated that the venue provision was enacted 'for the benefit of the defendants, not the plaintiffs.'" Reply at 2 (quoting United States ex rel Harvey Gulf Int'l Marine, Inc. v. Md. Cas. Co., 573 F.2d 245, 248 (5th Cir. 1978)). They also cite United States ex rel. Benefit of Bailey-Lewis-Williams of Fla., Inc. v. Peter Kiewit Sons Co. of Canada, Ltd., 195 F. Supp. 752 (D.D.C. 1961), in support of the contention that "courts have treated the Miller Act venue provision as an election for the defendant to assert or waive." Reply at 2. After a careful review of these cases, and the Fifth

Circuit's opinion in <u>Texas Construction Co. v. United States ex rel. Caldwell Foundry & Machine</u> <u>Co.</u>, on which these cases are based, the Court is unconvinced by this non-binding authority.

In <u>United States ex rel. Benefit of Bailey-Lewis-Williams of Fla., Inc. v. Peter Kiewit Sons</u> <u>Co. of Canada, Ltd.</u>, the United States District Court for the District of Columbia addressed a surety's motion to dismiss a Miller Act claim.  The surety argued that, because the contract was performed in Canada, the district court lacked jurisdiction over the suit.  The district court rejected this argument, holding in part that the Miller Act provided a venue requirement, not a jurisdictional prerequisite, and that the District of Columbia was, out of necessity, an appropriate venue to provide the plaintiff with the relief the Miller Act was meant to provide:

> The provision in the Miller Act as to suit being brought in the United States District Court where the contract was to be performed and executed relates to venue rather than to the power of the court to entertain suit.  <u>Such a venue provision confers</u> <u>a personal privilege on a defendant which may be asserted or waived at the election</u> <u>of the defendant</u>, and is waived if, when sued in some district other than the one where venue is laid, the defendant enters an appearance without claiming such privilege.  <u>Lee v. Chesapeake & Ohio Ry.</u>, 260 U.S. 653 . . . [1923]; <u>Texas</u> <u>Construction Co. v. United States</u>, 5 Cir., 236 F.2d 138 (1956).
>
> . . . .
>
> The conclusions of the Court are as follows: That the plaintiff as a supplier of labor and material on federal construction has been given by the Miller Act a right to sue the defendant surety on the payment bond; that this court has jurisdiction; that the Miller Act is highly remedial and is to be construed liberally to effect the object intended by Congress; that the provision in the Act that suit be brought 'in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere' relates to venue and is controlling when capable of application; that the formula for the place of suit as set forth in the venue provision is meaningless and incapable of application here; and therefore that the said venue provision should be construed as containing an exception in respect of suit such as this where the contract was to be performed and executed in a foreign country having no United States District Court.  Accordingly it is the view of the Court that the instant suit is maintainable.

195 F. Supp. at 755, 756 (footnotes omitted).  The district court did not address a plaintiff's attempt

to invoke or waive the Miller Act's venue provision, and the district court did not say that the provision confers a privilege <u>only</u> on defendants.  Instead the district court, to preserve the Miller Act's benefits for the plaintiff, "construed [the Miller Act] as containing an exception in respect of suit such as this where the contract was to be performed and executed in a foreign country having no United States District Court." 195 F. Supp. at 756.  The district court thus held that it had venue by necessity, as did the United States Court of Appeals for the D.C. Circuit when it affirmed the district court sub nom, in <u>Indemnity Ins. Co. of North America v. United States ex rel. Bailey-Lewis-Williams of Fla., Inc.</u>, 299 F.2d 930 (D.C. Cir. 1962), stating:

> On the basis of the well-reasoned opinion of District Judge Matthews, 195 F. Supp. 752 (1961), the order will be affirmed.  We add only that venue was properly laid in the District of Columbia, as the surety company was licensed to do business and does business here, <u>see</u> 28 U.S.C. § 1391 (1958), and as no other judicial district in the United States was suggested as an alternative forum.  Cf. <u>United States for Use and Benefit of Bryant Electric Co., Ltd. v. Aetna Casualty & Surety Co.</u>, 297 F.2d 665 (2d Cir. 1962).

299 F.2d at 931.  <u>See</u> <u>United States ex rel. Bryant Elec. Co. v. Aetna Cas. & Sur. Co.</u>, 297 F.2d 665, 669 (2d Cir. 1962)(similarly rejecting a defendant's argument that the United States District Court for the Southern District of New York lacked jurisdiction over a Miller Act claim based on a contract performed in Canada).

The D.C. District Court relied on the Supreme Court's decision in <u>Lee v. Chesapeake & Ohio Ry.</u>, which was not a Miller Act case, and the Fifth Circuit's opinion in <u>Texas Construction Co. v. United States ex rel. Caldwell Foundry & Machine Co.</u>, which cited <u>Lee v. Chesapeake & Ohio Ry.</u>, in support of its interpretation of the Miller Act.  In <u>Lee v. Chesapeake & Ohio Ry.</u>, the Supreme Court addressed whether a defendant's general appearance waives objections to improper venue under the Judicial Code and whether a plaintiff may object to the venue to which the defendant removes a case.  The plaintiff was a citizen and resident of Texas, and the defendant a corporate

citizen and resident of Virginia.  The plaintiff began the action in a state court in Bracken County,

Kentucy.  The defendant removed the case, based on diversity of citizenship, to the United States

District Court for the Eastern District of Kentucky, which included Bracken County.  The plaintiff

moved the district court to remand to the state court, arguing that the federal district court was

without jurisdiction, because neither party was a resident of that district.  The district court entered

judgment for the defendant, and the plaintiff appeal on a writ of error.

The Supreme Court first concluded that the district court had diversity jurisdiction over the

suit.  The Supreme Court next turned to the question whether the district court was the appropriate

forum:

> Section 51 of the Code (Comp. St. § 1033) relates to the venue of suits originally begun in those courts, and provides, subject to exceptions not material here, that --
>
> > '* * * No civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant.'
>
> It is a necessary conclusion from repeated decisions, going back to the original Judiciary Act of 1789 (1 Stat. 73) that this provision does not limit the general jurisdiction of the District Courts or withdraw any suit therefrom, but merely confers a personal privilege on the defendant, which he may assert, or may waive, at his election, and does waive if, when sued in some other district, he enters an appearance without claiming his privilege.
>
> . . . .
>
> Section 51 . . . merely regulates the place of suit, its purpose being to save defendants from inconveniences to which they might be subjected if they could be compelled to answer in any district, or wherever found.  Like similar state statutes, it accords to defendants a privilege which they may, and not infrequently do, waive.
>
> . . . .

It will be perceived that the right of removal under section 28 arises whenever a suit within the general jurisdiction of the District Courts is begun in 'any' state court, and also that the party to whom the right is given is designated in direct and unequivocal terms.  <u>Where the suit arises under the Constitution, or a law or treaty, of the United States, the right is given to 'the defendant or defendants' without any qualification; and as to 'any other suit' it is given to 'the defendant or defendants,' if he or they be 'nonresidents of that state.'</u>  In neither instance is the plaintiff's assent essential in any sense to the exercise of the right.  Nor is it admissible for him to urge that the removal be into the District Court for some other district, for it is his act in bringing the suit in a state court within the particular district which fixes the venue on removal.

260 U.S. at 655, 657 (citations omitted)(emphasis added).  The Supreme Court thus held that, because "removals are had only at the ins[is]tance of defendants," the removal statute "confers a personal privilege on the defendant, which he may assert, or may waive, at his election."  260 U.S. at 655, 657.  Unlike the Miller Act, the Judicial Code expressly vested the right of removal in only "the defendant or defendants."  260 U.S. at 657 (quoting 28 Stat. 1010).  <u>See</u> 28 U.S.C. § 1441 ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants . . . .").

In <u>Texas Construction Co. v. United States ex rel. Caldwell Foundry & Machine Co.</u>, the Fifth Circuit, in construing the Miller Act's venue provision, quoted the Supreme Court's decision in <u>Lee v. Chesapeake & Ohio Ry.</u>  The Fifth Circuit decided, as a matter of first impression for the federal judiciary, whether the Miller Act's requirement that an action be brought in the "district in which the contract was to be performed and executed and not elsewhere" was a restriction on venue or jurisdiction.  236 F.2d at 140 ("This precise question has not been decided by any federal court.").  The Fifth Circuit held that the Miller Act's language "is a restriction only on venue rather than on the power of the court to entertain the suit."  236 F.2d at 140.  After the district court entered judgment in favor of the plaintiff, the defendant/appellant appealed, arguing in part that 40 U.S.C. § 270b (2000) "is a jurisdictional as distinguished from a venue statute."  236 F.2d at 140.  The

plaintiff/appellee argued the statutory language "merely gave the defendant in such a suit the right to object if a suit was brought in another district, but did not restrict the power of the court to act if no such objection was made":

> Both parties . . . concede[d] that, upon proper motion, the defendant in a case brought in a district other than that in which the contract was to be performed could require a dismissal of the action as being in the wrong venue.  Appellants also concede[d] that if the Court h[eld] this to be a venue statute rather than one affecting jurisdiction of the Court, then their failure to move by timely motion to attack the venue would be fatal to their cause here.

236 F.2d at 140.

The Fifth Circuit relied in part on Supreme Court precedent interpreting the "Heard Act, a predecessor to the Miller Act, and one which had as its purpose the same end of protecting unpaid subcontractors and materialmen on government contracts." 236 F.2d at 140.  The Fifth Circuit noted that in United States v. Congress Construction Co., 222 U.S. 199 (1911), the Supreme Court interpreted a provision of the Heard Act:

> The Heard Act that was in effect before being superseded by the Miller Act in 1935, also sought to protect the United States and all persons supplying labor or materials on public works.  It achieved this result, somewhat imperfectly, by providing for a single bond on which the United States alone could sue during the first six months, with the right of others to intervene, but on which any one creditor could file suit in the name of the United States after expiration of six months.  Only one such suit could be filed by the entire group of creditors and the one on first filing was required to give notice by publication in a newspaper of general circulation, published in the state or town where the contract was being performed, and was also required to give personal notice to all known creditors.  The comparable language of the Heard Act to that here in issue also provided that such creditor was 'authorized to bring suit in the * * * (district) court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere. * * *' 33 Stat. 812.

> In the Congress Construction Company case, supra, the Supreme Court had this clause for construction.  The suit in the case was filed in a district other than that in which the contract was to be performed.  The defendant in that case filed a plea to the jurisdiction.  The trial court sustained this plea and an appeal was taken direct to the Supreme Court of the United States under the then existing law which

permitted appeals direct to that court where 'jurisdiction' was involved.   The Supreme Court there said:

> . . . .

> 'Considering the purpose of the statute, as manifested in these provisions, we think the restriction respecting the place of suit was intended to apply, and does apply, to all actions brought in the name of the United States, for the purpose only of securing an adjudication and enforcement of demands for labor or materials, whether instituted by the United States or by the creditors themselves.' . . . 222 U.S. 199, 203 . . . .

A careful reading of this case discloses the fact that the question the Court there had to decide was whether the particular provision of the Heard Act superseded the provisions of the General Jurisdictional Act, then in effect, 25 Stat. 433, c. 866, § 1, and not whether, if it did, it was a question of 'jurisdiction,' as now understood, as contrasted to venue.

236 F.2d at 141-42.

Having decided that the Supreme Court's decision in United States v. Congress Construction

Co. did not decide whether the statutory provision was jurisdictional, the Fifth Circuit found

guidance in Lee v. Chesapeake & Ohio R. Co.  The Fifth Circuit stated:

> [T]he Court, in Lee v. Chesapeake & Ohio R. Co., supra, was construing a section of the statute which appears to us to be as positive a limitation on the place where a suit could be brought as is the language in the Heard and Miller Acts. There, the Court in construing Section 51 of the then Judicial Code, found the following language:

> > '* * * No civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant.' 260 U.S. at page 655 . . . .

> No more positive statement could be made as to where a suit could be 'brought' than that.  Not even the language 'shall be brought in the * * * district in which the contract was to be performed and executed and not elsewhere.'  The Supreme Court said:

> > 'It is a necessary conclusion from repeated decisions, going back to the original Judiciary Act of 1789 that this provision does not limit the general jurisdiction of the District Courts or withdraw any suit

therefrom, but merely confers a personal privilege on the defendant, which he may assert, or may waive, at his election, and does waive if, when sued in some other district, he enters an appearance without claiming his privilege.' (Citing authorities.) 260 U.S. 653, 655 . . . .

What is there said by the Court is equally applicable to this special statute. Paragraph b(a) of Section 270 creates the right in any laborer or materialman to sue on the bond and thus places the general power in the courts of the United States to entertain such a cause of action. Paragraph b(b) states where such suits are to be 'brought.' This paragraph corresponds to the venue provision of the Judicial Code represented by Section 51, to which the Supreme Court referred in the <u>Lee</u> case.

. . . .

Moreover, we think it quite clear that the difference in the action authorized under the Miller Act from that contemplated under the Heard Act would also justify our placing a different construction on the critical language of the later law. As will be noted from the language quoted above from the <u>Congress Construction Company</u> case, the Court there commented particularly on the provision of the Miller Act limiting the relief to a single suit by one of the class of creditors. It thus became essential that the place of such action be considered as a strict condition of the bringing of the suit since the right of all creditors might be completely cut off unless those conditions were strictly complied with. Such is not the case under the provisions of the Miller Act. Each individual creditor has the right to file his own lawsuit without regard to other pending actions. He is not in jeopardy of losing his rights if he fails to intervene in another creditor's pending suit. <u>On this ground also we feel that the requirement as to the district in which suit may be filed, contained in the Miller Act, is only one for the benefit of the defendants and may thus be waived by them, as may any other question of venue.</u>

236 F.2d at 142-43 (emphasis added). The Fifth Circuit thus concluded that the Miller Act's venue provision is not jurisdictional, and also stated that it "is only one for the benefit of the defendants." 236 F.2d at 143. The Fifth Circuit's decision did not require it to decide whether the Miller Act's venue provision benefitted only defendants, or whether plaintiffs could also invoke it, making it factually inapposite. Moreover, it makes that section of the Fifth Circuit's decision dicta.

The Court is unconvinced by this persuasive authority on a number of accounts. First, the Fifth Circuit does not explain why the Supreme Court's interpretation of the removal statute, under which "the right [to remove] is [expressly] given to 'the defendant or defendants' without any

qualification," Lee v. Chesapeake & O. Ry. Co., 260 U.S. at 658 (quoting 28 Stat. 1010), "is equally applicable to" the Miller Act, Tex. Constr. Co. v. United States ex rel. Caldwell Foundry & Mach. Co., 236 F.2d at 142, which "is 'highly remedial in nature' and must be liberally construed 'to effectuate the Congressional intent to protect those whose labor and materials go into public projects," Limerick v. T. F. Scholes, Inc., 292 F.2d at 196 (quoting United States ex rel. Sherman v. Carter, 353 U.S. at 216).  The Supreme Court's opinion in Lee v. Chesapeake & O. Ry. Co. is also distinguishable, because the Supreme Court relied in part on the history of the removal statute, which Congress had amended from allowing removal by "either party" to allow removal only by defendants:

> We recognize that one purpose of the act of 1888 was to contract the jurisdiction of the Circuit Courts and that due regard should be had for this in interpreting indefinite or ambiguous provisions; but we think it affords no basis for subtracting anything from provisions which are definite and free from ambiguity.  A comparison of the removal provisions in the act of 1888 with those in the act of March 3, 1875, c. 137, 18 Stat. 470, which it displaced, will bring out very clearly the changes intended. The act of 1875 not only permitted the removal of all suits between citizens of different states where the amount in controversy exceeded $500, but declared without qualification that the removal might by 'either party.'  The act of 1888 confined the removal of such suits to instances where the amount in controversy exceeded $2,000, withheld the right of removal from the plaintiff, who always has a choice of forums, and gave the right to the defendant only where he was a nonresident of the state in which the suit was brought.  Thus, while the comparison shows that Congress intended to contract materially the jurisdiction on removal, it also shows how the contraction was to be effected.  Certainly there is nothing in this which suggests that the plain terms in the act os 1888 -- by which it declared that any suit 'between citizens of different states,' brought in any state court and involving the requisite amount, 'may be removed by the defendant or defendants' where they are 'nonresidents of that state' -- should be taken otherwise than according to their natural or ordinary signification.

260 U.S. at 660-61.  The Miller Act's legislative history reveals no analogous restriction.  The Court is unconvinced that the Supreme Court's interpretation of language in a statute that expressly protects only defendants, in particular where the statute had been amended to exclude plaintiffs,

provides much guidance for interpreting a statute that is designed to protect the plaintiffs.

Second, the Fifth Circuit construed the Miller Act's venue provision based on procedural peculiarities of its predecessor statute.  Unlike the Heard Act, which "limit[ed] the relief to a single suit by one of the class of creditors," the Miller Act allows each subcontractor "to file his own lawsuit without regard to other pending actions."  Tex. Constr. Co. v. United States ex rel. Caldwell Foundry & Mach. Co., 236 F.2d at 143.  When Congress enacted the Miller Act, it shed the procedural difficulties that burdened plaintiffs' recovery:

> The Miller Act worked two basic changes in this arrangement: the contractor was required to post two bonds, one protecting the government against failure to perform, the other protecting the subcontractor.  The government, being safeguarded by the performance bond, had no direct interest on the payment bond.  Each supplier of labor or material was permitted to institute a separate action to recover his claim; the pro rata provisions were dropped, creating a race among subcontractors until the bond was exhausted.

United States ex rel. Bryant Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d 665, 668 (2d Cir. 1962).

It is unclear why the Court should rely on procedural requirements Congress abandoned over a eighty years ago to interpret the language it retained.  In United States ex rel. Bryant Electric Co. v. Aetna Casualty & Surety Co., the United States Court of Appeals for the Second Circuit described the Miller Act's legislative history:

> Although these changes eliminated the basic reasons underlying the limitation of suit of one district court, the provision was retained.  Perhaps reflecting the elimination of its original purpose, as well as a change in scale of government operations, the provision was changed slightly; while the original statute limited suit to one district -- the district in which the contract was to be performed -- the Miller Act expanded the restrictions slightly by stipulating that suit could be brought in any district in which performance would occur.  Examination of the legislative history provides us with no clear indication as to why the clause was retained in this form.  The surety company officials who testified before the House Committee argued for retention of the single creditor's suit, so that they would be spared any risk of paying out more than the amount of the bond.  It is clear that they wanted a single suit, not just a single district in which suits would be brought, for they specifically feared that payment of the full amount of the bond in a prior action or actions would not be

> accepted as a bar to a later suit by another materialman.  It is equally clear that
> Congress did not heed these requests; the House Report envisaged that separate suits
> would be brought, and the shift from one to several possible districts reduced the
> chances that suits could be consolidated.  Thus the section retained scant utility, save
> as a convenience to the defendants.

297 F.2d at 668 (footnotes omitted). While the Second Circuit asserted that "the legislative history

provides . . . no clear indication as to why the clause was retained in this form," 297 F.2d at 668, the

legislative history reveals that the House Committee heard testimony that the venue provision as it

was written would benefit Miller Act plaintiffs.  Edward Cushman appeared before the House

Committee on behalf of and with the approval of subcontractors and material men -- specifically,

on behalf of the American Institute of Steel Construction, the Cement Institute, marble producers,

marble dealers, and with the "approval of representatives of other national associations of

subcontractors and material men." Bonds of Contractors on Public Works: Hearings on H.R. 2068,

H.R. 4027, H.R. 4231, H.R. 4461, H.R. 5054, H.R. 6018, H.R. 6115, H.R. 6677, and H.R. 8519

Before the H. Comm. on the Judiciary, 74th Cong. 23 (1935)(statement of Edward Cushman,

Philadelphia, Pa.)("Committee Hearing").  In contrast to the sureties, who "argued for retention of

the single creditor's suit," 297 F.2d at 668, Cushman stated, among other things, that subcontractors

and suppliers would benefit from: (i) requiring that suits be brought in the district where the contract

was to be performed; and (ii) allowing laborers and suppliers to bring separate actions.  On the first

point, Cushman indicated that the venue provision benefitted Miller Act plaintiffs, because it allows

them to pursue actions locally.  In support of his argument that Congress should require separate

bonds for the United States and laborers and suppliers, Cushman noted that, under the Heard Act,

the United States was not required to file suit where the contract was to be performed, and that

suppliers and subcontractors had to join the United States' action wherever it was filed.  He stated

that requiring laborers and suppliers to pursue suits in other forums worked "hardship" on suppliers

and subcontractors, because they were often local to where the contract was to be performed, and requiring them to join a suit in a different forum required them to either abandon their claims or travel to the distant forum:

> I have a case pending now which shows the hardship of such a provision: There is a small job in Virginia in which most of the claimants are local materialmen or laborers.  The United States has a claim of $2,000 on this job and it has forwarded the papers to Chicago for the purpose' of bringing suit there.  If that suit be instituted at Chicago, . . . in all probability these unpaid subcontractors and materialmen will have the privilege of giving up their claims or going out to Chiciago.

Committee Hearing at 25-26.  Cushman asserted that requiring the laborers and suppliers to pursue an action in a forum other than where the contract was to be performed "prejudice[d] the rights of these unpaid subcontractors and materialmen."  Committee Hearing at 26.  Thus, the House Committee heard testimony that the venue provision would benefit Miller Act plaintiffs.

On the second point, that laborers and suppliers would benefit from being allowed to bring multiple suits -- contrary to the sureties' request -- Cushman testified that allowing multiple suits would eliminate some of the procedural barriers that have proved nettlesome for Heard Act plaintiffs.  Cushman noted that the Supreme Court in United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157 (1911), had held that a plaintiff who intervened in a prematurely filed heard act suit lost his cause of action.  Cushman also noted that, in United States v. Bradley, 37 F.2d 347 (3d Cir. 1930), the United States Court of Appeals for the Third Circuit had rejected another plaintiff's attempt to avoid a similar fate by filing a new action instead of joining a prematurely filed suit.  Cushman stated:

> Although it sympathized with him, the Court held that since the statute required him to intervene in the suit first brought, the Court could not consider that first suit as a nullity.  It disallowed the meritorious claim of the second subcontractor who did not intervene in the first suit.  Yet, if he had intervened in the first suit, he would have lost, under the rule followed in the McCord case.

Committee Hearing at 24.  Cushman further argued that, after reviewing all published cases, he could find only one instance in which a bond was insufficient to cover all claims, and that duplicative suits could be avoided, because judges could consolidate actions springing from common grounds.  Thus, while "Congress did not heed [the sureties'] requests" for a single suit, United States ex rel. Bryant Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d at 668, it heeded the request of laborers and suppliers that they be allowed to bring multiple suits.  Congress also provided a separate bond for laborers and suppliers and required the action be brought where "the contract was to be performed and executed," 40 U.S.C. § 3133(b)(3), allowing Miller Act plaintiffs to bring suit locally.

Thrid, and perhaps most importantly, the Fifth Circuit's interpretation reads the Miller Act's venue provision narrower than the statute's plain language would suggest.  The Court is reluctant to read the Miller Act to restrict its benefits to defendants when its plain language "affords no basis for subtracting anything from provisions which are definite and free from ambiguity," Lee v. Chesapeake & O. Ry. Co., 260 U.S. at 660, particularly when the statute was enacted to "protect those whose labor and materials go into public projects," Limerick v. T. F. Scholes, Inc., 292 F.2d at 196 (quoting United States ex rel. Sherman v. Carter, 353 U.S. at 216).

The Fifth Circuit's subsequent opinions in United States ex rel. Harvey Gulf International. Marine, Inc. v. Maryland Casualty Co., and in Electronic & Missile Facilities, Inc. v. U. S. for Use of Moseley, 306 F.2d 554 (1962), rev'd on other grounds, sub nom, 374 U.S. 167 (1963), cite its opinion in Texas Construction Co. v. United States ex rel. Caldwell Foundry & Machine Co. for the proposition that "[t]he venue provision of the Miller Act is . . . enacted for the benefit of defendants, not plaintiffs."  United States ex rel Harvey Gulf Int'l Marine, Inc. v. Md. Cas. Co., 573 F.2d at 248 (citing Tex. Constr. Co. v. United States ex rel. Caldwell Foundry & Mach. Co., 236 F.2d at 143).

See Elec. & Missile Facilities, Inc. v. United States ex rel. Moseley, 306 F.2d at 556 ("[T]he Miller

Act, is only one for the benefit of the defendants and may thus be waived by them, as may any other

question of venue" (quoting Tex. Constr. Co. v. United States ex rel. Caldwell Foundry & Mach.

Co., 236 F.2d at 143)).  In United States ex rel. Harvey Gulf International Marine, Inc. v. Maryland

Casualty Co., the Fifth Circuit addressed in part a district court's entry of summary judgment against

the plaintiff on its Miller Act claim.  The contract at issue, "the West Atchafalaya contract[,] was

to be performed in the Western District of Louisiana, not the Eastern District where suit was filed."

573 F.2d at 247.  Quoting the Miller Act's language that suit should be brought where the contract

was performed, the Fifth Circuit reversed the district court's grant of summary judgment, holding

that the district court should have dismissed for lack of venue, and that harmless-error analysis was

inapplicable in light of the Miller Act's unambiguous language.  The Fifth Circuit stated:

> There is no question that venue was improper, that the defendant did not
> waive its objection, and that there is no ambiguity in the language of the venue
> statute.  We hold that the District Court erred in not dismissing the claim or in the
> alternative, transferring it to the proper forum pursuant to 28 U.S.C. s 1406(a).
>
> It has been suggested that it would be pointless to reverse and remand the
> claim since only additional expense, delay, and inconvenience would result in the
> event of retrial and since the defendant has failed to demonstrate prejudice by being
> forced to defend the merits of the case in the Eastern District.  We disagree.  To
> embark upon the search for "harmless error" would be to disregard the unambiguous
> Congressional mandate that Miller Act suits be brought in the district in which the
> contract was to be performed "and not elsewhere."
>
> The venue provision of the Miller Act is a restrictive one, enacted for the
> benefit of defendants, not plaintiffs.  Texas Construction Company v. United States,
> 236 F.2d 138, 143 (5th Cir. 1956).  Therefore the statute must be strictly construed,
> even more so than in the case of a general statute.
>
> The proper approach is seen in Supreme Court authority as well as in the cases of our
> sister circuits.  Michigan Nat. Bank v. Robertson, 372 U.S. 591 (1963); Olberding
> v. Illinois Central R. Co., 346 U.S. 338 (1953); Bechtel v. Liberty National Bank,
> 534 F.2d 1335 (9th Cir. 1976); Lied Motor Car Co. v. Maxey, 208 F.2d 672 (8th Cir.
> 1953).  All of these cases have one central theme.  In each, appellate courts have not

hesitated to reverse for improper venue after the merits of the case have been decided.

. . . .

Thus, we reverse and remand this portion of the case to the District Court for it to determine whether or not, in the interest of justice, the claim can or should be transferred to the proper district or be dismissed.  28 U.S.C.A. s 1406(a).

573 F.2d at 247-48, 249.  The Fifth Circuit relied on a number of non-Miller Act cases in which courts had reversed after judgment was entered under various statutory "restrictive venue provision[s]," reasoning that "[f]or [it] to enlarge upon the mandate of the Congress as to venue in such . . . actions would be an intrusion into the legislative field."  573 F.2d at 249 (quoting Schnell v. Peter Eckrich & Sons, 365 U.S. 260, 262-263 (1961)).[4]

In Electronic & Missile Facilities, Inc. v. United States ex rel. Moseley, the Fifth Circuit also stated that the Miller Act's venue provision "was obviously not designed to favor Miller Act plaintiffs."  306 F.2d at 556.  In that case, a plaintiff brought suit in the United States District Court for the Middle District of Georgia, where the contract at issue was performed.  The contract contained an arbitration clause, and the defendants moved, pursuant to the Arbitration Act, 9 U.S.C. § 2, to stay the action until the parties completed arbitration.  The district court denied the

---

[4] Similarly, in In re Fireman's Fund Insurance Cos., 588 F.2d 93, 95 (5th Cir. 1979), the Fifth Circuit vacated judgment and remanded with instructions to the district court to transfer venue to New Jersey in accordance with a forum selection clause in the contract between the parties.  The Fifth Circuit stated:

The Miller Act venue provision exists for the convenience of the parties.  Such a provision is subject to variation by their agreement which should especially be given effect in a case such as this, where the defendants, for whose special protection the venue clause exists, themselves have moved for transfer in accord with the forum selection clause.

588 F.2d at 95 (citations omitted).

-35-

defendants' motion, concluding that the arbitration clause was "contrary to the policy underlying

the Miller Act," because "a contrary holding would nullify the provisions of the Miller Act requiring

the appellee to sue in the District Court for the Middle District of Georgia and giving him the right

to prosecute the suit to final execution and judgment." 306 F.2d at 555.  The district court stated

that an alternative "reason why th[e] action should not be stayed is that the suit seeks to cancel or

rescind for fraud both of the subcontracts." 306 F.2d at 558.

> The Fifth Circuit, over the Honorable Richard Rives' dissent, reversed.  It stated:
>
> > We find this theory wholly unconvincing.  The venue provision of the Miller Act, requiring that suit be brought in the District where the contract was performed, was obviously not designed to favor Miller Act plaintiffs.  Had Congress meant to make things easy for such plaintiffs, it would have provided them with a choice of forums in which to bring suit.  As this Court noted in Texas Construction Company v. United States, 5 Cir., 236 F.2d 138 at page 143:
> >
> > > '* * * the requirement as to the district in which suit may be filed, contained in the Miller Act, is only one for the benefit of the defendants and may thus be waived by them, as may any other question of venue.'
> >
> > It seems clear, therefore, that the appellee will not be deprived of any substantial right if it is forced to comply with its voluntarily assumed obligation to arbitrate in New York City.
> >
> > . . . .
> >
> > The Miller Act does not give a plaintiff the 'right to select' his forum.  Rather, it provides that the action must be commenced in the district where the contract was performed.  This provision, as noted above, is for the benefit of the defendant, not the plaintiff, and the plaintiff is therefore not deprived of any substantial right if he is compelled to carry out his contract to litigate partially outside the district where the contract was performed.

306 F.2d at 556.  The Fifth Circuit also held that "the District Court erred in concluding that the

appellee's claim for rescission of the contracts on the ground of fraud was a bar to arbitration." 306

F.2d at 558.

The Fifth Circuit did not explain why its argument that, because it did not provide plaintiffs "a choice of forums in which to bring suit," the Miller Act's venue provision "was obviously not designed to favor Miller Act plaintiffs," did not also lead to the conclusion that the statute did not benefit defendants; Congress afforded neither party "a choice of forums in which to bring suit." 306 F.2d at 556. Under the Fifth Circuit's reasoning, the Miller Act's venue provision admits no beneficiary. The Fifth Circuit also did not explain why courts should ignore the "unambiguous Congressional mandate that Miller Act suits be brought in the district in which the contract was to be performed," particularly when the "unambiguous Congressional mandate" does not distinguish between plaintiffs and defendants. United States ex rel Harvey Gulf Int'l Marine, Inc. v. Md. Cas. Co., 573 F.2d at 248,

On appeal, the Supreme Court reversed the Fifth Circuit's decision, because the "Petitioner attack[ed] the subcontracts, as well as the arbitration agreement, as being fraudulent, and this issue, [the Supreme Court] conclude[d], must be first determined by the District Court." 306 F.2d 554, 559. Moseley v. Elec. & Missile Facilities, Inc., 374 U.S. 167, 169 (1963). The Supreme Court did not reach the Miller Act issue:

> Under either the Miller Act or the Arbitration Act, it seems clear that the issue of fraud should first be adjudicated before the rights of the parties under the subcontracts can be determined. . . . In view of our holding here, it is not necessary to reach the issues relating to arbitrability of disputes arising under these subcontracts. In fact, disposition of the fraud issue may dispose of the entire suit.

374 U.S. at 171. Chief Justice Warren and Justice Black concurred, because "to allow this question to be decided by arbitrators would be to that extent to enforce the arbitration agreement even though steeped in the grossest kind of fraud." 371 U.S. at 172 (Warren, C.J., joined by Black, J., concurring). They wrote separately, however, to "point out that this disposition leaves open questions of great importance to laborers and materialmen who under the Miller Act are entitled to

have their controversies settled in independent courts of law," including whether

> a member of the special class of laborers and materialmen <u>which Congress, in the public interest, has protected by fixing the venue for their claims</u> under the Miller Act in a particular federal court deprive himself of that kind of remedy as a condition of his obtaining the employment or the purchase of his materials.

371 U.S. at 172 (Warren, C.J., joined by Black, J., concurring)(emphasis added).

Judge Rives dissented in the Fifth Circuit's opinion in <u>United States ex rel. Harvey Gulf International Marine, Inc. v. Maryland Casualty Co.</u>, forcefully arguing that the Miller Act's venue provision benefits plaintiffs:

> I agree with the district court's appraisal of the intention of Congress with respect to the two Acts here involved. . . . [T]he Miller Act was enacted in 1935 with the provision that suits of the type here involved shall be brought 'in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere' (emphasis supplied), 40 U.S.C.A. 270b(b), and with its even more explicit provision that every person who has furnished labor or material and has not been paid therefor within ninety days 'shall have the right to sue on such payment bond for the amount * * * unpaid at the time of institution of such suit and to prosecute said action to find execution and judgment for the sum or sums justly due him. * * *' . . . .  Government contractors were restricted in the kinds of agreements into which they might validly enter to those conforming to the public policy declared in the Miller Act.
>
> The Heard Act, which was the predecessor of the Miller Act, had also been intended to protect those whose labor or material had contributed to the prosecution of the work on Government contracts.  Under the Heard Act the Government was given the sole right to sue on the bond for six months after completion of the work and final settlement.  Thereafter other claimants could sue but had to join in a single action.  As we commented in <u>Texas Construction Company v. United States</u>, 5 Cir., 1956, 236 F.2d 138, 143, 'it thus became essential that the place of such action be considered as a strict condition of the bringing of the suit since the right of all creditors might be completely cut off unless those conditions were strictly complied with.'  If the Heard Act were still in force no one could seriously urge the validity of the present agreement which provides: 'Any controversy or claim arising out of or relating to this agreement or the breach thereof. * * * shall be settled by arbitration in the Borough of Manhattan, City and State of New York in accordance with the Civil Practice Act of the State of New York.'
>
> The majority quotes from <u>Texas Construction Company v. United States</u>, <u>supra</u>, the following passage: '* * * the requirement as to the district in which suit

may be filed, contained in the Miller Act, is only one for the benefit of the defendants and may thus be waived by them, as may any other question of venue.'

In the <u>Texas Construction Company</u> case that language was employed in connection with the holding that a prime contractor and his bonding company when sued in a district other than that in which the contract was to be performed and executed may waive objection to the place of suit.  In that context, the language employed does not mean that the requirement of the Miller Act that suit be brought 'in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere' was intended for the benefit of the defendants to the exclusion of the plaintiffs; it means no more than that the requirement relates to venue rather than jurisdiction and may be waived by both parties.

There is nothing in the language of the Act, or in its legislative history, which would restrict to the defendants the benefit of that requirement.  The propriety of extending its protection to the plaintiffs is shown by the observation of the district court:

> 'The instant case strikingly demonstrates the purpose of Congress in thus providing an exclusive venue . . . .  The inherent inconvenience and injustice of Moseley's being forced to transport himself, his records, and his witnesses from the scene of the activities under investigation to a point so distant as New York City is from Macon, Georgia, is readily apparent.'

. . . .

In <u>MacEvoy Co. v. United States</u>, 1944, 322 U.S. 102, 105, . . . , the Supreme Court said:

> 'The Miller Act, while it repealed the Heard Act, reinstated its basic provisions and was designed primarily to eliminate certain procedural limitations on its beneficiaries.  There was no expressed purpose in the legislative history to restrict in any way the coverage of the Heard Act; the intent rather was to remove the procedural difficulties found to exist under the earlier measure and thereby make it easier for unpaid creditors to realize the benefits of the bond.'

<u>United States for Use and Benefit of Bryant Elec. Co. v. Aetna Casualty & Surety Co.</u>, 2d Cir., 1962, 297 F.2d 665, at page 667 points out:

> 'Every subcontractor and materialman not reimbursed for work done under a contract is given an unqualified right to sue on the payment bond.' . . . .

In discussing the changes made between the Heard Act and the Miller Act, the court said, pages 668-669:

> 'The primary aim of the Miller Act was to secure greater protection for the subcontractor. The major changes were designed to streamline the cumbersome Heard Act machinery and to facilitate suit by those supplying labor or materials to the general contractor. * * *

> '* * * The purpose of the Miller Act was clearly to provide a forum for all unpaid subcontractors.'

. . . .

> The Miller Act provides to every person who has furnished labor or material . . . the right to sue in the district in which the contract was to be performed and executed . . . .

306 F.2d at 558-60 (Rives, J., dissenting). The Court believes that Judge Rives has the better interpretation of the Miller Act's venue provision. The Miller Act's plain language does not suggest that the Court should read its venue provision to benefit only defendants. On the contrary the Miller Act was enacted to benefit plaintiffs, and Congress rejected the request of Miller Act sureties that it restrict plaintiffs to bringing a single action. See United States ex rel. Bryant Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d at 668 (footnotes omitted).

While no other Court of Appeals has adopted the Fifth Circuit's interpretation of the Miller Act's venue provision, the Second Circuit has approvingly noted that this line cases is consistent with its finding that the Miller Act's venue provision is "of 'scant utility, save as a convenience to the defendants.'" United States ex rel. Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc., 364 F.2d 705 (2d Cir. 1966)(quoting United States ex rel. Bryant Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d at 668). In United States ex rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc., the Second Circuit stated:

-40-

[W]hen our court last considered in detail the history and purpose of Section 2(b) of the Miller Act we concluded that the provision requiring Miller Act plaintiffs to bring suit in a United States district court for a district in which the contract was to be performed and not elsewhere was now of 'scant utility, save as a convenience to the defendants.' United States for the Use and Benefit of Bryant Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d 665 . . . (2 Cir. 1962). We continue to believe this is a correct statement of that section's purpose. That case did not require us to decide whether Section 2(b) contained a venue requirement or a jurisdictional limitation. Id. at 669. But other courts that have decided this issue have, almost without exception, held that Section 2(b) is a venue requirement, and have agreed with us that its purpose is to give some incidental protection to Miller Act defendants. Electronic & Missile Facilities, Inc. v. United States for the Use of Moseley, 306 F.2d 554 (5 Cir. 1962), rev'd on other grounds, 374 U.S. 167 . . . (1963); Texas Constr. Co. v. United States for the Use of Caldwell Foundry & Mach. Co., Inc., 236 F.2d 138 (5 Cir. 1956); United States for the Use of Mitchell Bros. Truck Lines v. Jen-Mar Constr. Co., 223 F. Supp. 646 (D. Or. 1963); United States for the Use and Benefit of Industrial Eng'r. & Metal Fabricators, Inc. v. Eric Elevator Corp., 214 F. Supp. 947 (D. Mass. 1963); United States for the Use and Benefit of Bailey-Lewis-Williams, Inc. v. Peter Kiewit Sons Co., Ltd., 195 F. Supp. 752 (D.D.C. 1961), aff'd per curiam, 299 F.2d 930 (D.C. Cir. 1962); cf. United States for the Use of Air-Con., Inc., v. Al-Con Dev. Corp., 271 F.2d 904 (4 Cir. 1959); United States for the Use and Benefit of Frank A. Trucco & Sons Co. v. Bregman Const. Co., 256 F.2d 851 (7 Cir. 1958). Contra United States for the Use and Benefit of Fairbanks Morse & Co. v. Bero Constr. Corp., 148 F. Supp. 295 (SDNY 1957). It is thus quite settled that Section 2(b) of the Miller Act requiring Miller Act plaintiffs to sue in a federal district court for a district in which the contract was to be performed and not elsewhere is a venue provision benefiting defendants in some cases.

364 F.2d at 707.[5]   The Second Circuit, noting Judge Reeves dissent in Electronic & Missile

---

[5] The district court cases the Second Circuit cites held that the Miller Act's venue provision restricts venue and not jurisdiction. One did not address whether the Miller Act's venue provision benefits only defendants. See United States ex rel. Mitchell Bros. Truck Lines v. Jen-Mar Constr. Co., 223 F. Supp. 646, 646-47 (D. Or. 1963)("[T]he language in issue places a restriction on venue, rather than on the power of the Court to entertain the litigation." (citing Tex. Constr. Co. v. United States ex rel. Caldwell Foundry & Mach. Co., 236 F.2d at 140)). In United States ex rel. Industrial Eng'r. & Metal Fabricators, Inc. v. Eric Elevator Corp., 214 F. Supp. 947 (D. Mass. 1963), the United States District Court for the District of Massachusetts stated:

Plaintiff's view is that the provision as to the place of bringing suit was inserted into the Miller Act for the protection of plaintiffs and that to permit agreements to arbitrate in any other district would defeat the purpose of the Act. It does not appear, however, that the provision is necessarily one for the protection of plaintiff. The

-41-

Facilities, Inc. v. United States for the Use of H. W. Moseley, asserted:

> Judge Rives, dissenting In Electronic & Missile Facilities, Inc. v. United States for the Use of H. W. Moseley, supra 306 F.2d at 558-560, argued that Section 2(b) benefited plaintiffs because it was more convenient for them to bring suit in a district in which the contract was to be performed than it was to bring suit elsewhere. That might have been true in that case. But the place in which the contract was to be performed is not necessarily, or even usually, the place in which a Miller Act plaintiff may find it most convenient to sue. Without question it would be more convenient for Miller Act plaintiffs if they only had to contend with the Judicial Code's general venue provision, 28 U.S.C. § 1391.

United States ex rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc., 364 F.2d at 707 n.2.

Regardless of whether the "place in which the contract was to be performed is . . . necessarily, or even usually, the place in which a Miller Act plaintiff may find it most convenient to sue," it is unclear how it serves the Miller Act's purposes -- or comports with its plain language -- to deny plaintiffs the protections of its venue protection. Indeed, when the place of performance is not where the plaintiff prefers to bring suit, the plaintiff can elect to waive the venue requirement. Consequently, the plaintiff would invoke the Miller Act's venue provision when the place of performance is the plaintiff's preferred venue, realizing the Miller Act's policy of "protect[ing] those who supply labor or materials to a contractor on a federal project." F.D. Rich Co., Inc. v.

---

> place in which the contract was to be performed is not necessarily that in which in any given case the plaintiff may find it most convenient to sue. The provision has in fact been held by some courts to be for the protection of defendants. Texas Construction Company v. United States for Use of Caldwell Foundry & Mach. Co., 5 Cir., 236 F.2d 138. In any event, plaintiff has offered no convincing argument that the Miller Act provision, even if for plaintiff's protection, cannot be waived by a free contract of the parties to arbitrate their differences at some other place.

214 F. Supp. at 949. Moreover, the other Courts of Appeals' cases the Second Circuit cited do not address whether the Miller Act's venue provision benefits only defendants. See United States ex rel. Air-Con., Inc., v. Al-Con Dev. Corp., 271 F.2d 904, 910 (4th Cir. 1959)(upholding arbitration clause in Miller Act claim); United States ex rel. Frank A. Trucco & Sons Co. v. Bregman Const. Co., 256 F.2d 851, 854 (7th Cir. 1958)(holding that, where both prime contractor and subcontractor filed suits, notwithstanding arbitration provision in contract, the arbitration provision is waived).

United States ex rel. Indus. Lumber Co., Inc., 417 U.S. at 121-22.  In the Court's experience, which comports with Cushman's statement to the House Committee, prime contractors are often national or international companies, while subcontractors, suppliers, and laborers are often smaller, regional or local companies.  It follows that having the forum be where the contract was to be performed or executed would typically benefit Miller Act plaintiffs, because they could bring suit locally.

The Court also thinks it is significant that Congress did not amend the Miller Act in accordance with the Fifth Circuit's interpretation when it amended and recodified the Act in 2002. Congress, which amended the Miller Act in the light of court decisions interpreting it to protect only defendants, could have decided to modify the language to indicate this restriction.  Congress did not make such a change.  Instead, Congress clarified, consistent with judicial interpretation that the Miller Act provides a limitation on venue and not on jurisdiction, that the Miller Act's requirement than action under it be brought in the district where the contract was to be performed or executed limits the venue where an action may be brought:

> **Venue**. -- A civil action brought under this subsection must be brought--
>
> > **(A)** in the name of the United States for the use of the person bringing the action; and
> >
> > **(B)** in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy.

40 U.S.C. § 3133(b)(3)(B)(bold in original).  Congress made no mention of plaintiffs or defendants. To read the Miller Act's venue provision to apply only to defendants would trench "upon the mandate of the Congress as to venue" and thereby "would be an intrusion into the legislative field." United States ex rel. Harvey Gulf Intern. Mar., Inc. v. Md. Cas. Co., 573 F.2d at 249 (quoting Schnell v. Peter Eckrich & Sons, 365 U.S. at 262-263).

Moreover, neither the Supreme Court nor the Tenth Circuit have interpreted the Miller Act

as protecting only defendants.  On the contrary, the Tenth Circuit stated in United States for Use of B & D Mechanical Contractors, Inc. v. St. Paul Mercury Insurance Co., 70 F.3d 1115 (10th Cir. 1995), that "Congress enacted the Miller Act to protect persons who supply labor and materials for the construction of federal buildings," which is the Miller Act plaintiff.  Limerick v. T. F. Scholes, Inc., 292 F.2d at 196 ("[T]he Miller Act . . . is 'highly remedial in nature' and must be liberally construed 'to effectuate the Congressional intent to protect those whose labor and materials go into public projects."  (quoting United States ex rel. Sherman v. Carter, 353 U.S. at 216).  In their concurrence in Moseley v. Elec. & Missile Facilities, Inc., Chief Justice Warren and Justice Black stated that "Congress, in the public interest, has protected [laborers and materialmen] by fixing the venue for their claims under the Miller Act in a particular federal court."  371 U.S. at 172 (Warren, C.J., joined by Black, J., concurring).  In Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co., 322 U.S. 102 (1944), the Supreme Court stated that the Miller Act "was designed primarily to eliminate certain procedural limitations on its beneficiaries.  There was no expressed purpose in the legislative history to restrict in any way the coverage of the Heard Act; the intent rather was to remove the procedural difficulties found to exist under the earlier measure and thereby make it easier for unpaid creditors to realize the benefits of the bond."  322 U.S. at 105.  It would contravene this purpose to read the Miller Act's venue provision to benefit only defendants.

Moreover, when the Supreme Court held in F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc. that the Miller Act's venue provision established "merely a venue requirement" in 1974 -- approximately eighteen years after the Fifth Circuit first stated that the Miller Act's venue provision benefits only defendant in Texas Construction Co. v. United States ex rel. Caldwell Foundry & Machine Co., and twelve years after the Fifth Circuit repeated this statement in Electronic & Missile Facilities, Inc. v. U. S. for Use of Moseley -- the Supreme Court did not adopt

this reasoning.  It did not read the Miller Act's venue provision to benefit only one particular party, and it did not hold the defendant could elect to waive the venue requirement; instead, the Supreme Court applied the venue provision against the objecting defendant to decide that the defendant was properly sued in the district the Miller Act required.  If plaintiffs could not enforce the Miller Act's venue provision against the defendants' desire, the Supreme Court would not have analyzed whether the plaintiff's choice of venue was appropriate under the Miller Act; it would have instead employed a traditional venue analysis.

In P & P Industries, Inc. v. Sutter Corp., 179 F.3d 861 (10th Cir. 1999), the Tenth Circuit, in holding that the Arbitration Act did not provide exclusive venue in district courts, pointed to the Miller Act as an example of "unambiguous language" that expresses Congress' intention that a "specific district court . . . be the exclusive forum for a certain matter":

> Furthermore, "ordinary canons of statutory construction suggest that Congress would have used stronger language than 'such application may be made' or 'may apply' if the intention was to restrict the power of a federal court in Arbitration Act cases." [Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 706 (2d Cir. 1985)] (citation omitted) (emphasis added).  Indeed, as the Seventh Circuit has indicated, when Congress intends for one specific district court to be the exclusive forum for a certain matter, it uses unambiguous language to express its intention.  See In re VMS Sec. Litig., 21 F.3d at 144 & n. 3 (referencing the Miller Act, 40 U.S.C. § 270b(b), which states that "[e]very suit instituted under this section shall be brought . . . in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere," and the Clean Air Act, 42 U.S.C. § 7604(c)(1), which states that "[a]ny action . . . may be brought only in the judicial district in which such sources are located"); see also Apex Plumbing Supply, Inc., 142 F.3d at 192.

179 F.3d at 869.

Other courts have held that parties cannot waive the Miller Act's venue provision.  In United States ex rel. Coffey v. William R. Austin Const. Chaco., 436 F. Supp. 626 (W.D. Okla. 1977), the United States District Court for the Western District of Oklahoma held that, despite the parties' agreement and desire to proceed in the Western District of Oklahoma, and despite that neither party

-45-

had attacked jurisdiction and venue of the court, or requested a transfer of the case to the Western

District of Arkansas, where the contract was performed, the district court transferred the action in

the interest of justice.  Relying on the Seventh Circuit's statement "hold[ing] that the language of

[the Miller Act] is unequivocal in stating that actions are to be brought in the United States District

Court for the district of performance 'and not elsewhere,'" the district court sua sponte transferred

the case:

> This language must be strictly construed.  We agree with the following analysis set forth in <u>McDaniel v. University of Chicago</u>, 512 F.2d 583 (7th Cir. 1975):
>
>> The Miller Act requirements that suit be brought in the name of the United States for the use of the person suing, that venue be limited to the district in which the contract was to be performed or executed, and the narrow one year limitation period are clearly designed to facilitate the orderly and equitable disposition of all competing rights in the bond and reenforce the conclusion that Miller Act subject matter jurisdiction is limited to suits on the bond. . . .
>
>> The matter of jurisdiction and venue in this case was discussed in depth at the pretrial conference held herein to include the production and reading of the above case.  Apparently the parties desire to proceed here and none have attacked the jurisdiction and venue of this Court or requested a transfer of this case to United States District Court for the Western District of Arkansas.  But the Court must look to its own jurisdiction at all times.  Our Circuit has spoken in this situation.
>
>> Hence, sua sponte the Court transfers this action in the interest of justice to the United States District Court for the Western District of Arkansas pursuant to 28 U.S.C. § 1406(a) where the same could have and should have been brought.  The Clerk is directed to effect the transfer of this case to United States District Court for the Western District of Arkansas without delay.

436 F. Supp at 628.

In sum, the Court is unconvinced by the persuasive authority of the Fifth Circuit line of cases

and its progeny that hold the Miller Act's venue provision benefits defendants and not plaintiffs.

The Miller Act's venue provision does not suggest such an interpretation.  "There is nothing in the

-46-

language of the Act, or in its legislative history, which would restrict to the defendants the benefit

of that requirement." Elec. & Missile Facilities, Inc. v. United States ex rel. Moseley, 306 F.2d at

559 (Rives, J., dissenting).  As Judge Rives forcefully argued in his dissent, reading the act to deny

Miller Act plaintiffs the benefits of the Act's venue provision is contrary to the language and spirit

of the Act.

## III.  RULE 13 DOES NOT REQUIRE THE COURT TO DISMISS OR TO TRANSFER BMT CO.'S MILLER ACT CLAIM.

The Defendants argue in support of their Motion that BMT Co.'s Miller Act claim is a

compulsory counterclaim under rule 13(a).  BMT Co. responds that rule 13(a) is unavailing in the

face of the "unambiguous Congressional mandate that Miller Act suits be brought in the district in

which the contract was to be performed." United States ex rel Harvey Gulf Int'l Marine, Inc. v. Md.

Cas. Co., 573 F.2d at 248.  Rule 13(a) states that "[a] pleading must state as a counterclaim any

claim that -- at the time of its service -- the pleader has against an opposing party if the

claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's

claim . . . ."  Fed. R. Civ. P. 13(a)(1)(A).

> Despite the impression one might get from the name of the doctrine, no one is
> "compelled" to present a compulsory counterclaim.  Only a litigant that wants to
> avoid a later defense of preclusion need do so.  The definition of a compulsory
> counterclaim -- a claim that "arises out of the transaction or occurrence that is the
> subject matter of the opposing party's claim" -- mirrors the condition that triggers a
> defense of claim preclusion (res judicata) if a claim was left out of a prior suit.  The
> aspect of preclusion known as "merger and bar", see Migra v. Warren City School
> District Board of Education, 465 U.S. 75 . . . (1984); Cromwell v. County of Sac, 94
> U.S. 351 . . . (1877), prevents the plaintiff in the first suit from later making any
> claim that arose out of the same transaction but was omitted from the initial suit.  See
> Herrmann v. Cencom Cable Associates, Inc., 999 F.2d 223 (7th Cir. 1993);
> Supporters to Oppose Pollution, Inc. v. Heritage Group, 973 F.2d 1320 (7th Cir.
> 1992). Rule 13(a) establishes that a defendant's omission has the same consequences
> as a plaintiff's.  Southern Construction Co. v. Pickard, 371 U.S. 57, 60 . . . (1962).
> Whether this is strictly an application of claim preclusion may be debated, see
> Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Federal Practice and

Procedure § 1417 (2d ed.1990), but both the scope of the doctrine and its rationale are the same as those of claim preclusion, and most of the time the label is inconsequential.

Publicis Communc'n v. True N. Communc'ns Inc., 132 F.3d 363, 365-66 (7th Cir. 1997). "Nothing in Rule 13 prevents the filing of a duplicative action instead of a compulsory counterclaim." Adam v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991). Courts have held that rule 13(a) is not a vehicle to challenge venue. See Mammoth Res. Partners, Inc. v. Phoenix Drilling, Inc., No. 1:10-CV-36-M, 2010 WL 2651079, at *6 (W.D. Ky. June 20, 2010)("[V]enue is not controlled by Fed. R. Civ. P. 13(a) . . . . Rather, venue is controlled by 28 U.S.C. § 1391 . . . ."). "The filing of the second action, however, contravenes the purpose of Rule 13: 'Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceeding.'" Adam v. Jacobs, 950 F.2d at 93 (quoting 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1418, at 142-43 (2d ed. 1990 & Supp.1991)). Because the Defendants seek dismissal or transfer of venue, rule 13(a) is not the vehicle for the relief they seek.

Moreover, a statutory venue provision may remove a claim from rule 13(a)'s dictates. There is a dearth of authority addressing whether the Miller Act's venue provision prevails over rule 13(a) when the earlier action was not brought in the venue the Miller Act requires. The Court finds guidance in Caleshu v. United States, 570 F.2d 711 (8th Cir. 1978), a tax law case. The United States Court of Appeals for the Eighth Circuit held that, where rule 13(a) conflicted with a statutory venue requirement, a matter involving the same transaction or occurrence was not a compulsory counterclaim. In that case, the "the government assessed Caleshu with certain taxes totaling over $30,000 owed by several Hawaii corporations on the theory that Caleshu was a responsible person under 26 U.S.C. § 6672." 570 F.2d at 712. Caleshu paid part of the assessed taxes before bringing

-48-

an action in the "United States District Court for the Eastern District of Missouri against the United States and others, seeking a refund of alleged overpayments of federal taxes and an injunction against further collection of assessed taxes." 570 F.2d at 712. On the United States' motion, the Eastern District of Missouri transferred the case to United States District Court for the District of Hawaii. Caleshu petitioned the Eighth Circuit for a writ of mandamus, and the Eighth Circuit "direct[ed] the district court to vacate its order granting a change of venue from the United States District Court for the Eastern District of Missouri to the District of Hawaii, and to deny the government's motion for change of venue." 570 F.2d at 712. The United States subsequently filed an action in the District of Hawaii pursuant to 26 U.S.C. § 7402(a) to reduce the unpaid assessments to judgment. Caleshu countered by filing a motion in the Eastern District of Missouri to stay the action in Hawaii. "[T]he district court granted Caleshu's motion to stay the Hawaii action, holding that the government's collection action in Hawaii is a compulsory counterclaim under Fed. R. Civ. P. 13(a) to Caleshu's refund action in the Eastern District of Missouri." 570 F.2d at 713. The United States appealed.

The Eighth Circuit held that the United States' second action in the District of Hawaii was not a compulsory counterclaim:

> In the instant case the government concedes there is a logical connection between Caleshu's refund action in the Eastern District of Missouri and the government's Hawaii collection action. The government further does not dispute that absent other superceding considerations, the subject matter of the Hawaii collection suit would be a compulsory counterclaim within Rule 13(a). It is the government's position, however, that the nature and purpose of the statutes authorizing government tax collection suits demonstrate Congress' intent that such suits were not to be compulsory counterclaims. We agree.
>
> If a taxpayer neglects or refuses to pay any tax, the Secretary of the Treasury may authorize the Attorney General to initiate a collection action to reduce the assessment to judgment under 26 U.S.C. ss 7401 and 7402(a). Congress has provided that "Any civil action for the collection of internal revenue taxes may be

brought in the district where the liability for such tax accrues, in the district of the taxpayer's residence, or in the district where the return was filed." 28 U.S.C. s 1396. Additionally this venue statute does not contain a proscription against bringing actions in other than the enumerated districts when a statute such as 26 U.S.C. s 7403 provides an independent basis for venue. United States v. Stone, 59 F.R.D. 260, 264 (D. Del.1973). This court held in Caleshu v. Wangelin, [549 F.2d 93 (8th Cir. 1977)], that refund suits brought by individual taxpayers may be prosecuted only in the judicial district in which the plaintiff resides. Therefore, in the instant case if the government's Hawaii action was held to be a compulsory counterclaim, this would necessarily limit any government collection action to the district of Caleshu's residence. We are not persuaded that Congress so intended to limit the government.

570 F.2d at 714.

Analogous reasoning leads the Court to conclude that BMT Co.'s Miller Act claim is not a compulsory counterclaim, notwithstanding both actions arising from the same transaction or occurrence. If a plaintiff was forced to file its Miller Act claim as a counterclaim in a defendant's first-filed action, a defendant could defeat the Miller Act's venue provision by preemptively filing suit in a different forum. This result would undermine the "unambiguous Congressional mandate that Miller Act suits be brought in the district in which the contract was to be performed." United States ex rel Harvey Gulf Int'l Marine, Inc. v. Md. Cas. Co., 573 F.2d at 248.

In Southern Const. Co. v. Pickard, 371 U.S. 57 (1962), the Supreme Court addressed the inverse argument: that a defendant's claim was barred when it failed to bring a compulsory counterclaim in response to a plaintiff's Miller Act claim. In that case, the subcontractor worked on a project rehabilitating barracks. Three contracts covered the work in Georgia and another contract covered the work in Tennessee. The subcontractor did not complete the work at either site, and one of the subcontractor's suppliers alleged that it was owed $34,520.00 for materials furnished on the Tennessee project and $104,000.00 for materials furnished on the Georgia project, and that the contractor and subcontractor were jointly liable for the debt. The prime contractor paid the supplier $35,000.00 in exchange for a complete release of all liability on both projects.

-50-

The subcontractor brought a suit in Georgia against the prime contractor for non-payment under the contracts.  The prime contractor counterclaimed for the amount it paid the supplier. Because the Miller Act "appeared to prohibit an action in the Georgia District Court on the Tennessee project, Pickard in April 1957 filed" a second action -- that was ultimately appealed to the Supreme Court -- against the contractor in Tennessee, which "relat[ed] to the Tennessee project only, and by amendment eliminated this part of his claim from the Georgia action."  371 U.S. at 58-59.  The prime contractor "dropped" the $35,000.00 counterclaim from the Georgia action, and first asserted the payment as a counterclaim in the Tennessee action, but "later waived any claim to affirmative relief in [the Tennessee] action and sought only a credit of $34,520 against Pickard's contract claim on the Tennessee project."  371 U.S. at 59.  The district court in the Tennessee action allowed the credit and held that the subcontractor was not entitled to any recovery.

> [O]n this point the Court of Appeals for the Sixth Circuit reversed.  It held that since there had been no allocation of the $35,000 payment as between the Georgia and Tennessee projects the item, under Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., was a 'potential compulsory counterclaim' in either of the two suits; that when the responsive pleading in the Georgia suit was filed the counterclaim was not the subject of any other pending action and was therefore 'compulsory' in that suit; and, accordingly, that such counterclaim could not later be asserted in the present action.

371 U.S. at 59-60 (citations omitted).  Cf. Publicis Communc'n v. True N. Communc'ns Inc., 132 F.3d at 366 ("One court of appeals has expressed in dictum the view that a party to a forum-selection clause may not raise in a different forum, even as a compulsory counterclaim, a dispute within the scope of that clause. That conclusion must be right."  (citing Karl Koch Erecting Co. v. N.Y. Convention Ctr. Dev. Corp., 838 F.2d 656, 659 (2d Cir.1988))).

The Supreme Court reversed the Sixth Circuit.  Accepting "that the $35,000 payment had not been allocated as between the Tennessee and Georgia projects and that it therefore could have

been asserted in either action," the Supreme Court held:

> The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.  The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint.  See, e.g., United States v. Eastport S.S. Corp., 2 Cir., 255 F.2d 795, 801-802.
>
> It is readily apparent that this policy has no application here.  In this instance, the plaintiff-respondent, who originally sought to combine all his claims in a single suit, correctly concluded that he was required by statute to split those claims and to bring two separate actions in two different districts.  The fragmentation of these claims, therefore, was compelled by federal law, and the primary defendant in both actions was thus for the first time confronted with the choice of which of the two pending suits should be resorted to for the assertion of a counterclaim common to both.  Under these circumstances, we hold that Rule 13(a) did not compel this counterclaim to be made in whichever of the two suits the first responsive pleading was filed.  Its assertion in the later suit, to which Southern, not without reason, considered it more appurtenant, by no means involved the circuity of action that Rule 13(a) was aimed at preventing.  Accordingly, the judgment of the Court of Appeals insofar as it related to this counterclaim is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

371 U.S. at 60-61 (footnotes omitted)(emphasis added).

The Court finds guidance in two points from the Supreme Court's opinion.  First, the Supreme Court stated that the Miller Act required the plaintiff to "split" its claims and "bring two separate actions in two different districts."  371 U.S. at 60.  While the Supreme Court did not address Miller Act counterclaims, as the Seventh Circuit stated in Publicis Communication v. True North Communications  Inc., the "merger and bar" doctrine imposes the same requirements on plaintiffs as rule 13(a) does on defendants.  132 F.3d at 365-66 (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75 (1984); Cromwell v. Cnty. of Sac, 94 U.S. 351 (1877); Herrmann v. Cencom Cable Assocs., Inc., 999 F.2d 223 (7th Cir. 1993); Supporters to Oppose Pollution, Inc. v. Heritage Group, 973 F.2d 1320 (7th Cir. 1992)).  Notwithstanding this doctrine, the Supreme

Court stated that "[t]he fragmentation of these claims . . . was compelled by federal law."  371 U.S. at 60.

Second, similar policy considerations militate against concluding that rule 13(a) bars BMT Co.'s action in this Court.  While, unlike the defendants in <u>Southern Const. Co. v. Pickard</u>, BMT Co. did not join an existing action in this Court, BMT Co. successfully moved to transfer the Texas Action here.  BMT Co., thus, does not seek to create duplicative actions, but moved the action from the Norther District of Texas to the District of New Mexico.[6]  The parties are in accord that

---

[6] BMT Co. likely brought its Miller Act claim in this action -- instead of filing it as a counterclaim in the Texas Action and then seeking to remove -- because it sought to avoid being held to have waived it.  "At present the courts are divided as to whether a defendant who interposes a compulsory counterclaim may attack plaintiff's original claim on the basis of a lack of venue or personal jurisdiction."  6 C. Wright, A. Miller, M. Kane & R. Marcus, <u>Federal Practice and Procedure</u> § 1416 (3d ed. 2011).  In <u>Neifeld v. Steinberg</u>, 438 F.2d 423 (3d Cir. 1971), the United States Court of Appeals for the Third Circuit rejected the argument that a party waives its challenges to venue and jurisdiction when it files a counterclaim, but noted that other courts have accepted the argument:

> [Neifeld] argues that when Steinberg filed his counterclaim in the same pleading in which his jurisdictional defenses appeared, he utilized the court facilities in a manner inconsistent with his objections to personal jurisdiction, venue, and service of process. . . .  Neifeld's argument has in fact been accepted by the majority of courts that have considered this problem.  In <u>Hook & Ackerman, Inc. v. Hirsh</u>, 98 F. Supp. 477 (D.D.C. 1954), involuntary plaintiffs in patent infringement litigation filed an answer in which they joined two defenses of lack of personal jurisdiction and improper venue with a counterclaim against the plaintiffs.  The involuntary plaintiffs unsuccessfully attempted to have the action dismissed for lack of jurisdiction and improper venue.  The court denied the motion and held: 'Although rule 12(b) permits the joinder of the defense of lack of jurisdiction with any defense on the merits and therefore a party although actually before the court does not waive his jurisdictional defenses, it would not appear that this liberality afforded by the Federal Rules of Civil Procedure may be extended to a situation where, as here, the party files a counter action seeking affirmative relief.  In such a case the party submits himself to the jurisdiction of the court. * * *'  <u>Id.</u> at 478.  Another case in which a defendant asserted lack of personal jurisdiction and improper venue in the same pleading with a counterclaim is <u>Beaunit Mills, Inc. v. Industrias Reunidas F. Matarazzo, S.A.</u>.  The court after discussing the nonapplicability of Rule 12(b), held that the seeking of affirmative relief by a party waives any jurisdictional defense.  In <u>Winslow Mfg. Co.</u>

v. Peerless Gauge Co., 202 F. Supp. 931 (N.D. Ohio 1958), the court held that the filing of a counterclaim after the defendant had challenged the venue of the court was sufficient to waive the challenge of venue impropriety.  Finally, there are a number of other cases which have indicated that a party waives his jurisdictional defenses by asserting a counterclaim . . . .   There is a paucity of reasoning in each of the aforementioned cases with no discussion of the policy behind Rule 12(b), i.e., the abolition of special appearances. . . . .

The only cases which have found no waiver of jurisdictional defenses are those cases where the defendant asserted a compulsory counterclaim.  Dragor Shipping Corp. v. Union Tank Car Co., 378 F.2d 241 (9 Cir. 1967) (no waiver of personal jurisdiction); Hasse v. American Photograph Corp., 299 F.2d 666, 668-669 (10 Cir. 1962) (no waiver of personal jurisdiction); Baltimore & Ohio R. Co. v. Thompson, 80 F. Supp. 570 (E.D. Mo.1948), affirmed on other grounds, 180 F.2d 416 (8 Cir. 1950) (no waiver of venue).  Also see 5 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1397, at 878-80 (1969); 59 Colum. L. Rev. 1094 (1959).  In Dragor Shipping Corp., supra, the rationale of finding no waiver is succinctly stated: 'Under Rule 13(a) a party who fails to plead a compulsory claim against an opposing party is held to have waived such claim and is precluded by res judicata from bringing suit upon it again. (Citation and footnote omitted).  However, since such a party has no alternative but to submit his compulsory claim against an opposing party, or lose it, his act in asserting it does not constitute a waiver of any jurisdictional defense he previously or concurrently asserts.' 378 F.2d at 244.  While we agree that a defendant's case is even stronger for finding no waiver when a jurisdictional defense is combined with a compulsory counterclaim, we do not think that we should find a waiver simply because the counterclaim in the instant case is not compulsory.  Rule 13(b) does not place any restrictions on a defendant's right to assert a permissive counterclaim.  Nor does Rule 13(b) mention any untoward procedural results (such as waiver) which will be occasioned by the assertion of a permissive counterclaim.

438 F.2d at 430 & n.15.  The modern trend is towards rejecting the waiver argument.  See Hillis v. Heineman, 626 F.3d 1014, 1018 (9th Cir. 2010)("Our decision that assertion of a counterclaim or third-party claim does not waive the defense of improper venue is in accord with the consistent views of the leading federal procedure treatises."  (citing 5C C. Wright & A. Miller, Federal Practice and Procedure § 1397 (3d ed. 2004)("The trend in more recent cases is to hold that no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory. . . .   The same result has been reached by several courts with regard to the effect of interposing cross-claims and third-party claims.  This approach seems sound."); 3 James Wm. Moore, Moore's Federal Practice § 13.111 (Matthew Bender 3d ed. 2010)("It is increasingly held that a defendant does not waive jurisdictional defenses by asserting a compulsory counterclaim.  Some courts find that jurisdictional defenses are not waived by filing permissive counterclaims or crossclaims.")).

-54-

this action and the Texas Action should be tried together.  See Tr. at 12:14-20 (Gorman); Tr. at 6:9-22 (Gruenert).  Their dispute centers on which forum should decide the matter.

In sum, because "[n]othing in Rule 13 prevents the filing of a duplicative action instead of a compulsory counterclaim," and "once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceeding,'" Adam v. Jacobs, 950 F.2d at 93 (citations omitted), the Court does not believe that rule 13(a) is an appropriate vehicle for moving to dismiss or transfer venue, see Mammoth Res. Partners, Inc. v. Phoenix Drilling, Inc., 2010 WL 2651079, at *6.  Moreover, because the parties agree that their claims should be tried together, and dispute only in which forum the claims should be heard, this dispute does not implicate rule 13(a)'s underlying policy of avoiding duplicative actions.  The Court therefore will not grant the Defendants' Motion on these grounds.

## IV.   **THE NORTHERN DISTRICT OF TEXAS FIRST DECIDED VENUE ISSUES**.

The Tenth Circuit has held that the court that first has jurisdiction over an action should decide issues of venue.  In Hospah Coal Co. v. Chaco Energy Chaco. the Tenth Circuit stated:

> Both parties recognize the general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case.  O'Hare International Bank v. Lambert, 459 F.2d 328 (10th Cir. 1972), and cases cited therein.
>
> . . . .

---

Generally, courts have held that a defendant who asserts a permissive counterclaim indicates a desire to use the forum for personal objectives and thus should not be permitted simultaneously to object to plaintiff's claim on the grounds of inconvenience.  Although several decisions indicate that the assertion of a compulsory counterclaim produces the same result, the better rule . . . is that defendant does not waive objections to jurisdiction and venue over the main claim by asserting a compulsory counterclaim.

6 C. Wright, A. Miller, M. Kane & R. Marcus, supra § 1416.

This circuit has adopted the rule announced in <u>Barber Greene Company v. Blaw-Knox Company</u>, 239 F.2d 774, 778 (6th Cir. 1957) that, "in both in rem and in personam actions, jurisdiction relates back to the filing of the complaint." <u>Accord, Product Engineering and Manufacturing, Inc. v. Barnes</u>, 424 F.2d 42 (10th Cir. 1970). The rule that jurisdiction relates back to the filing of the complaint gives effect to Fed. Rules Civ. Proc. rule 3, 28 U.S.C.A., which provides that, "(a) civil action is commenced by filing a complaint with the court."

. . . .

[<u>Kerotest Mfg. Co. v. C-0-Two Co.</u>, 342 U.S. 180 (1952)] stands for the proposition that simply because a court is the first to obtain jurisdiction does not necessarily mean that it should decide the merits of the case. However, in <u>Kerotest</u> the Court pays great deference to the district court's ability to decide if it should accept venue. We believe that <u>Kerotest</u> is in line with our view that the court which first obtains jurisdiction should be allowed to first decide issues of venue.

673 F.2d at 1163-64. The Defendants first filed the Texas Action before BMT Co. filed this action.

The court which first obtains jurisdiction should be allowed to first decide issues of venue.

Accordingly, Judge McBryde decided to transfer the Texas Action to the District of New Mexico.

The Court therefore denies the Motion.

**IT IS ORDERED** that the Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue, filed May 18, 2011 (Doc. 16), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Patrick J. Hart
David P. Gorman
Sheehan Sheehan & Stelzner, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

-56-

David H. Thomas, III
Dave Thomas & Associates, P.C.
Albuquerque, New Mexico

-- and --

Paul D. Gibson
Donald H. Knecht, Jr.
Gibson, Gruenert & Zaunbrecher, PLLC
Lafayette, Louisiana

-- and --

Thomas G. Gruenert
Gibson, Gruenert & Zaunbrecher, PLLC
Pearland, Texas

*Attorneys for the Defendants*